ROSEVILLE TRUST COMPANY, BY GEORGE M. LA MONTE, COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY, APPELLANT, v. AMERICAN SURETY COMPANY OF NEW YORK ET AL., RESPONDENTS.

Submitted December 10, 1917—Decided March 4, 1918.

1. As used in a fidelity bond given for the protection of a trust company against the willful misapplication of its funds by its teller, the words "willfully misapplied" mean a conversion of funds of the trust company to the use or benefit of the teller or of some one other than the trust company with intent to injure and defraud the company. By the term "willfully" is meant purposely or designedly. The intent to injure and defraud, which is essential, does not necessarily involve malice or ill will, but merely that general intent to injure and defraud which always arises, in contemplation of law, when one willfully or intentionally does that which is illegal and fraudulent, and which, in its necessary and natural consequences, must injure another.

2. In an action by a trust company on a fidelity bond given for the protection of a trust company against the willful misapplication of its funds by its teller, the admitted facts showed that the teller designedly and intentionally (1) gave his $2,000 check on the plaintiff trust company knowing that his balance was insufficient to meet it, (2) caused the check to be paid by the company to its loss, (3) abstracted the check itself, (4) contrived that the check should not be charged to his account, (5) falsified the accounts and books for the purpose of concealing the abstraction. *Held*, that the necessary effect of these acts was the conversion of funds of the trust company to his use and benefit to the pecuniary loss of the company and they constituted a willful misapplication of its funds.

3. The connivance on the part of the treasurer of a trust company in a willful misapplication of the funds of the company by its teller, in order to advance the latter's outside speculations, does not release the tellers' surety from liability.

4. A surety company is not relieved of its liability for a willful misapplication by the teller of a trust company of its funds by the fact that several days after the transaction was completed, the teller, without the knowledge or consent of the directors of the trust company, gave a note to the treasurer of the trust company which was worthless and never paid.

On appeal from the Supreme Court.

For the appellant, *Roger Hinds* (*Edward F. Clark* of the New York bar on the brief).

For the respondent American Surety Company, *Edwards & Smith* (*Edwin F. Smith* on the brief).

The opinion of the court was delivered by

TRENCHARD, J.  This action was brought by the Roseville Trust Company (in liquidation) against its teller and the surety on the teller's fidelity bond, by the terms of which bond the defendants bound themselves to pay plaintiff "such pecuniary loss, not exceeding ten thousand dollars, as the employer shall have sustained of employer's money, funds or other personal property (or belonging to others for which the employer may be legally responsible), stolen, embezzled, wrongfully abstracted or willfully misapplied by said employe  *   *   *.*"

The jury at the Essex Circuit found for the plaintiff as to several of the items claimed, but the plaintiff appealed from the judgment because the trial judge directed the jury to find for the defendants as to an item of $2,000, and we are now concerned with that item only.

We are of the opinion that the learned trial judge erred.

We think that the evidence showed conclusively that Jennings, the plaintiff's teller, *willfully misapplied* $2,000 of the company's money to its pecuniary loss.

Most of the facts respecting the $2,000 item are undisputed.  The facts of the *transaction itself* upon which recovery depends, are all admitted by the defendants, and, indeed, are shown beyond dispute by the books and records of the trust company.

In June, 1913, the defendant Jennings was the paying teller of the Roseville Trust Company.  According to his own story, he and Charles F. Meyer wished to purchase a moving picture concern from Walter H. Meier.  Jennings, as he says, "was desirous, and had been for some time, of getting out of the banking business."  On June 3d, 1913, he drew a check for $2,000 upon his personal checking account in the Rose-

ville Trust Company to the order of Walter H. Meier for his share of the purchase price. Jennings' balance was not sufficient to pay the check, being on that day only $105.90, and he admits that he was well aware at the time he drew the check that he had not sufficient funds in his account to pay it. Meier deposited the check in his own account with the Merchants National Bank and it was duly presented with others to the Roseville Trust Company by an "exchange" messenger from the Union National Bank, "clearing" for the Roseville Trust Company. In the ordinary course of business the check when it came in with the others in the "exchange" should have gone to the bookkeeper with the other checks to see whether the ledger balance was sufficient to pay it. Had this been done, the fact that there were not sufficient funds to pay it would have at once appeared, and the check would not have been paid, but would, in the usual course, have been returned to the Merchants National Bank as worthless. Jennings admits that he removed the check from the basket before it got to the bookkeeper, and substituted a memorandum slip charging the "first teller" (himself) with $2,000. He admits that the effect of this abstraction was that *the check was paid* by the Roseville Trust Company, *but not out of his account.* The memorandum slip charging Jennings with $2,000 would inevitably have required Jennings to produce its equivalent in cash or valid check unless the slip itself could be suppressed by Jennings—and he accordingly did suppress it in the following manner: According to the usual routine the $2,000 slip would be held by Thompson, the receiving teller, as a "cash item" until the close of that day (June 3d, 1913), and be then turned over by him, along with his cash and other "cash items," to paying teller, Jennings, as part of the cash and other items with which Jennings should start his work for the following day. Thompson's testimony, supported by his "proof-book," showed that he accordingly did turn over at the close of June 3d this $2,000 charge slip to Jennings, as part of a number of "cash items," aggregating $4,100.53. Now, Jennings' "proof-book" should correspondingly show on June 4th, 1913, that he received $4,100.53 in

"cash items" from the receiving teller, but it actually did show only $2,100.53. Jennings admitted that the figures on that page of his proof-book were all in his own handwriting, including the digit "2" in the figures "$2,100.53." The "2" had obviously been written over some other digit which had been erased. A footing of the column containing the figures $2,100.53 shows that if the amount of "cash items," as received from the receiving teller, had been correctly entered as $4,100.53, Jennings' proof-book would have been out of balance and that the balance had been "forced" by the physical falsification. Neither the $2,000 slip nor the $2,000 check was found among the trust company's records. Jennings admitted that he made no effort to repay the money to the trust company and that he had no funds.

The question whether or not these acts constituted embezzlement (an offence differing from willful misapplication— *United States* v. *Northway*, 120 *U. S.* 327) is one that we are not now called upon to consider. They, undoubtedly, constituted a willful misapplication of funds, and that is sufficient for recovery in the present case.

The funds of a trust company are "willfully misapplied" by its teller when he converts them to his own use or benefit, or to the use and benefit of some one other than the trust company, with intent to injure and defraud the trust company. *Fidelity and Deposit Co.* v. *Courtney*, 186 *U. S.* 342; *United States* v. *Britton*, 107 *Id.* 655; *United States* v. *Northway*, 120 *Id.* 327; *Evans* v. *United States*, 153 *Id.* 584; *Coffin* v. *United States*, 156 *Id.* 432.

By the term "willfully" is meant purposely or designedly. The intent to injure and defraud, which is necessary to constitute a willful misapplication, does not necessarily involve any malice or ill-will, but merely that general intent to injure and defraud which always arises, in contemplation of law, when one willfully or intentionally does that which is illegal and fraudulent, and which, in its necessary and natural consequences, must injure another. *Agnew* v. *United States*, 165 *U. S.* 36; *Walsh* v. *United States*, 174 *Fed. Rep.* 615; *Pearce* v. *United States*, 192 *Id.* 561.

In the case at bar the evidence shows, and, indeed, the defendant Jennings (the teller), in effect, admits, that he designedly and intentionally did the following fraudulent and illegal things—(1) he drew and gave his $2,000 check on the plaintiff trust company, knowing that his balance was insufficient to meet it (a misdemeanor when done, as here, by an officer or employe—*Comp. Stat., p.* 5661, § 15); (2) he caused the check to be paid by the trust company to its loss; (3) he abstracted the check itself; (4) he contrived that the check should not be charged to his account; (5) he falsified the accounts and books for the purpose of concealing the abstraction (a high misdemeanor—*Comp. Stat., p.* 5661, § 17). The necessary effect of these acts was the conversion of funds of the trust company to his use and benefit to the pecuniary loss of the company, and constituted a willful misapplication of its funds. *Fidelity and Deposit Co.* v. *Courtney, supra; Keliher* v. *United States,* 193 *Fed. Rep.* 8.

We have not overlooked the fact that the defendant Jennings (the teller), testified that Smith (the treasurer of the trust company), in order to advance Jennings' outside speculations, told him to "go ahead and give the check."

If it be assumed that this was true (which Smith denies), it does not help the defendants. The connivance on the part of the treasurer of a trust company in a willful misapplication of the funds of the company by its teller, in order to advance the latter's outside speculations, does not release the teller's sureties from liability. *McShane* v. *Howard Bank,* 73 *Md.* 135; *Chew* v. *Ellingwood,* 86 *Mo.* 260; *Breese* v. *United States,* 106 *Fed. Rep.* 680. Corporations can act only by officers and agents. They do not guarantee to the sureties of one officer the fidelity of the others. The fact that there was another unfaithful officer of the company who knew and connived at his infidelity ought not in reason, and does not in law, relieve his surety of responsibility for him. The surety undertook that he should be honest, though another was dishonest. Were the rule different, by a conspiracy between the officers of a trust company, all their sureties might be discharged. *McShane* v. *Howard, supra.*

Moreover, in the present case it should be noted that the mere giving of the check by Jennings to Meier was no offence *against the trust company*. If he had done nothing further, the check would automatically have been taken from the "clearing" basket and sent back to the Merchants National Bank because of insufficient funds, so that Meier and not the trust company would have been the injured party. Even, therefore, if Jennings told the truth in saying Smith told him to "go ahead and give the check," Smith's advice amounted to no more than defrauding Meier by giving him a worthless check. The real offence *against the trust company* had its inception when Jennings, by abstracting the check, caused it to be paid, and prevented his account from being charged therewith, and it is not suggested that Smith advised Jennings to do any of these things.

Nor have we overlooked the fact that Jennings testified (and Smith denied) that several days later he gave Smith a note for $2,000.

A surety company is not relieved of its liability for a willful misapplication by a teller of the funds of a trust company by the fact that several days after the transaction was completed, the teller, without the knowledge or consent of the directors of the trust company, gave a note to the treasurer of the company which was worthless and was never paid. *Evans* v. *United States, supra; Dorsey* v. *United States,* 101 *Fed. Rep.* 746 (writ denied, 178 *U. S.* 618).

The note in question, if given at all, was worthless and was never paid. It was given several days after the misapplication of the funds had been completed and without the knowledge or consent of the board of directors of the company or its executive committee. And it is to be noted that *Comp. Stat., p.* 5661, § 15, makes a loan to an employe without the vote of the board of directors or its executive committee a misdemeanor.

Upon the whole, our conclusion is that the verdict was wrongly directed for the defendants with respect to the $2,000 item, and, indeed, we think that on the evidence submitted

at the trial there should have been a direction of a verdict for the plaintiff with respect thereto.

Since the judgment is appealed from in this respect only, and the matter appealed from is separable, it will be reversed and a new trial awarded as to the $2,000 item. There appears to be no reason why final judgment should not be entered in the court below and enforced as to the part not appealed from.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, JJ.   13.