THE FIRST NATIONAL BANK OF EDGEWATER, N. J., Respondent, *v.* NATIONAL SURETY COMPANY, Appellant.

**Insurance (indemnity) — banks and banking — charge — action to recover upon policy insuring bank against loss from dishonesty of employees — erroneous charge that cashier committed dishonest act in permitting depositor to withdraw money against checks deposited but unpaid — question for jury whether cashier in permitting account to be overdrawn acted in bad faith — erroneous charge that permitting overdrawing of account was a criminal or dishonest act and that purpose could not be explained — erroneous refusal to charge that payment of funds of bank on drafts against uncollected deposits is not a crime under National Banking Act.**

1. In an action to recover upon an indemnity policy insuring plaintiff against loss through " the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misapplication or misappropriation or any other dishonest or criminal act or omission " of, among others, its cashier, it was error for the trial justice to instruct the jury that the cashier committed a dishonest act and misapplied the funds of the bank within the terms of the policy if he knowingly permitted a depositor to draw out moneys from the bank on its checks before deposits by it had been cashed. If such withdrawal was authorized, or permitted by the cashier through an honest mistake in judgment, or to help his bank, or in the ordinary course of the bank's business, and without any dishonest intent or purpose, it would not be an act covered by the policy.

2. Evidence that the depositor had made a practice of depositing checks and drawing on them before, in the process of collection, the deposits were paid; that this had been going on for a long time and that the bank had lost no money thereby, together with testimony of the cashier that he had no knowledge of any improper practice of the depositor in connection with its deposits until a few days before its bankruptcy; that he had made an examination of its financial condition and found it solvent, and that he relied, for his action, upon information given him by a director of the bank, taken together with other evidence in the case, presents a question for the jury to determine whether the cashier, in directing or permitting the depositor's account to be overdrawn, during the last days preceding its bank-

ruptcy, was acting in bad faith, and dishonestly, or for and in the interest of the bank, and it was error to instruct the jury or leave them to believe that the permitting of an overdraft or the overdrawing of an account was an act in violation of law, a criminal act, or a dishonest act, or that the purpose for which such overdraft was permitted could not be explained or excused.

3. It was also error for the court to refuse to charge, as requested by defendant's counsel, " that to pay out funds of the bank on checks drawn against uncollected deposits is not a crime under the National Banking Act." The request was a correct statement of the law as applicable to National banks, and the refusal of the court to so charge, without explanation, permitted the jury to believe that such an act was criminal.

*First National Bank* v. *National Surety Co.*, 215 App. Div. 809, reversed.

(Argued May 11, 1926; decided May 25, 1926.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 4, 1926, affirming a judgment in favor of plaintiff entered upon a verdict.

*Robert H. Elder* and *Otho Bowling* for appellant. The undisputed evidence proved that plaintiff failed to give the required notice within the ten days. (*Gallin* v. *Allemania Fire Ins. Co.*, 184 App. Div. 876; *Hull* v. *Littauer*, 162 N. Y. 569; *Woolverton* v. *N. Y. Fidelity Co.*, 190 N. Y. 41; *Christatos* v. *New England Casualty Co.*, 95 Misc. Rep. 618; *Ward* v. *Maryland Casualty Co.*, 71 N. H. 262; *Moran* v. *Pacific Coast Cas. Co.*, 48 Wash. 592; *Black Co.* v. *London Guarantee & Accident Co.*, 190 App. Div. 218; 232 N. Y. 535; *Ehrreich* v. *Cohn*, 170 App. Div. 828; *Walrath* v. *Hanover Fire Ins. Co.*, 216 N. Y. 220; *Alsens A. P. C. Co.* v. *Degnon Contracting Co.*, 222 N. Y. 34; *Draper* v. *Oswego Co. Fire Rel. Assn.*, 190 N. Y. 12.) The court erroneously charged that if Coe permitted checks to be cashed when drawn against uncollected deposits, it was dishonest misapplication of plaintiff's funds, and that the verdict should be for

plaintiff. (*Wallace* v. *Lincoln Savings Bank*, 89 Tenn. 630; *Commercial Bank* v. *Ten Eyck*, 48 N. Y. 305.) The court erred in declining to charge that to pay out funds of the bank on checks drawn against uncollected deposits is not a crime under the National Banking Act. (*Wilson* v. *United States*, 162 U. S. 613; *Coffin* v. *United States*, 162 U. S. 664; *United States* v. *Heinze*, 218 U. S. 532; *United States* v. *Steinman*, 172 Fed. Rep. 913; *Galbreath* v. *U. S.*, 257 Fed. Rep. 654; *United States* v. *Jenks*, 258 Fed. Rep. 763.) Plaintiff failed to make a case because there was no proof that Coe was guilty of being either criminal or dishonest. (*Coffin* v. *United States*, 162 U. S. 664; *United States* v. *Heinze*, 218 U. S. 532, 539; *United States* v. *Steinman*, 172 Fed. Rep. 913; *Galbreath* v. *United States*, 257 Fed. Rep. 654; *United States* v. *Jenks*, 258 Fed. Rep. 763.) The court erred in receiving in evidence the testimony of Stolzenberg that he and the Hamilton Dairy Company had " kited " a large number of checks, and in declining to strike out such evidence. (*People* v. *Harris*, 209 N. Y. 70.)

*A. S. Gilbert* and *Godfrey Cohen* for respondent. The term of the bond as to notice was either complied with or waived. (*National Surety Company* v. *Western Pac. Ry. Co.*, 200 Fed. Rep. 675; *Fidelity & Casualty Co. of New York* v. *Bank of Timmonsville*, 139 Fed. Rep. 101; *Brink* v. *Hanover Fire Ins. Co.*, 80 N. Y. 108; *Second Nat. Bank of Allegheny* v. *Lash Corp.*, 299 Fed. Rep. 371; *Oelbermann* v. *Toyo Kisen Kabushiki Kaisha*, 3 Fed. Rep. [2d] 5; *Isham* v. *Erie Railroad Co.*, 112 App. Div. 612; 191 N. Y. 547; *Alsens A. P. C. Works* v. *Degnon Contracting Co.*, 222 N. Y. 34; *Glazer* v. *Home Ins. Co.*, 190 N. Y. 6.) There was no error in the court's charge. The case was tried and submitted to the jury on appellant's own theory of the law. (*Commercial Bank* v. *Ten Eyck*, 48 N. Y. 305.) The court correctly declined to charge at the defendant's request that to pay out

funds of the bank on checks drawn against uncollected deposits is not a crime under the National Banking Act. (*Coffin* v. *United States,* 162 U. S. 664; U. S. R. S. § 5209; *Galbreath* v. *United States,* 257 Fed. Rep. 656; *United States* v. *Britton,* 107 U. S. 655; *United States* v. *Northway,* 120 U. S. 327.)   The evidence justified the finding of the jury that Coe, plaintiff's cashier, was affirmatively dishonest.   The proof justified a finding that he connived with the Hamilton Dairy Company to loan them large sums of money belonging to the bank which he and it knew would not be authorized by the board of directors of the plaintiff bank.   (*Wallace* v. *Lincoln Savings Bank,* 89 Tenn. 630; *United States* v. *Fish,* 24 Fed. Rep. 585; *Craigie* v. *Hadley,* 99 N. Y. 131; *Brown* v. *Finn,* 34 Fed. Rep. 124; *Germ. Sav. Bank* v. *Wulfelkuhler,* 19 Kans. 60; *Logan* v. *Fidelity Phenix Fire Ins. Co.,* 161 App. Div. 404; *Coffin* v. *United States,* 156 U. S. 432; *United States* v. *Heinze,* 218 U. S. 532; *U. S. Fidelity & Guaranty Co.* v. *Egg Shippers, Strawboard & Filler Co.,* 148 Fed. Rep. 353; *Prettyman* v. *United States,* 180 Fed. Rep. 30; *Minor* v. *Mechanics Bank of Alexandria,* 1 Pet. 46.)   The court committed no error in the reception of Stolzenberg's testimony.   (*Logan* v. *Fidelity Phenix Fire Ins. Co.,* 161 App. Div. 404; *Germ. Sav. Bank* v. *Wulfekuhler,* 19 Kans. 60; *Craigie* v. *Hadley,* 99 N. Y. 131; *Brown* v. *Finn,* 34 Fed. Rep. 124.)

Crane, J.   The policy of insurance issued by the defendant to the plaintiff provided as follows:

" The National Surety Company as Insurer,   *   *   * hereby binds itself to pay to First National Bank, Edgewater, N. J., as Employer, such pecuniary loss as the Employer shall sustain of money or other personal property (including that for which the Employer is responsible) through the Fraud, Dishonesty, Forgery, Theft, Embezzlement, Wrongful Abstraction, Misapplication or Misappropriation or Any Other Dishonest or

Criminal Act or Omission of or by any of the employees listed in the schedule forming part of this bond directly or In Connivance With Others while such employee Holds Any Position At Any Location in the service of the Employer   *   *   *."

Elmer J. S. Coe, cashier, was listed in the schedule of the bond. The defendant's liability was fixed at $45,000 as to him.

The Hamilton Dairy Company had been a depositor at this bank for many years, long before Coe became cashier.   It was said to have owned eight or ten creameries near Roscoe, in the State of New York.

On the 13th of August, 1920, the Hamilton Dairy Company went into bankruptcy, and the bank lost about $16,348.   This loss was caused by overdrafts on the bank made just prior to bankruptcy.   The bank has sued the defendant, claiming that the acts and omissions of Coe, its cashier, were responsible for the overdrafts, and that these acts and omissions were dishonest within the meaning of the above clauses taken from the policy.

The plaintiff has recovered a judgment for $20,572.35, which has been affirmed in the Appellate Division by a divided court, two of the justices dissenting.

The case has been argued before us largely upon the court's charge which, if the appellant be right, presented the case to the jury upon a theory which the respondent cannot sustain.   If the trial justice told the jury that Coe, the cashier, committed a dishonest act and misapplied the funds of the bank within the terms of the policy, if he knowingly permitted the Hamilton Dairy Company to draw out moneys from the bank on their checks before deposits by them had been cashed, he was clearly in error.   If such withdrawal was authorized, or permitted by Coe through an honest mistake in judgment, or to help his bank, or in the ordinary course of the bank's business, and without any dishonest intent or purpose, it would not be an act covered by this policy,

whatever else it might be as between Coe and the bank.

We understand the respondent's counsel to concede the correctness of this statement. He, however, points out that the judge fully covered all these elements in his charge and clearly and distinctly told the jury that the plaintiff could only recover by proving Coe's dishonesty. We of course agree that the judge did make these statements to the jury, but we are also inclined to believe for the reasons hereinafter stated that he defined and explained " dishonesty " to mean in this case the direction or permission to allow overdrafts to the Hamilton Dairy Company; that this, and this alone without any other intent and purpose would constitute dishonesty. It now remains to consider whether or not our conclusion be correct, and to state briefly that portion of the record upon which it is based.

The evidence shows that the Hamilton Dairy Company had made a practice of depositing checks and drawing on them before in the process of collection the deposits were paid. This had been going on for a long time. The bank, whether aware of this or not, had lost no money through this practice up to the time in question. Jacob Stolzenberg was in the butter and egg business, buying milk from the Hamilton Dairy Company. As an accommodation, he gave his checks to the company, which it deposited with the bank to make good its own checks. This method is referred to as the kiting of checks. About 338 of these checks of Stolzenberg's passed through the bank and were drawn on by the Hamilton Dairy Company before they were paid. Stolzenberg's checks however, were always paid. His testimony was: " Q. Your checks were good checks, weren't they? A. Yes, sir. Q. All paid? A. All paid." This refers to the 338 checks, and up to within a week of the bankruptcy, when some of the checks were not paid. Coe testified that he knew nothing about this practice of the kiting

of checks until his return from his vacation about the fourth of August, at which time he gave instructions not to pay the Hamilton Dairy Company checks until there were cash deposits to meet them. He did admit that just before the Hamilton Dairy Company ceased to do business, he ordered certain of their checks to be paid, although deposits had been rejected. He, however, was not permitted to explain his action in this particular. This is what occurred at the time.

" Q. Now, you were starting to explain how you came to order those payments made on the 12th when you know that certain checks had been returned. Explain that, please?

" Mr. Gilbert: I object on the ground that no explanation can obviate the testimony given that he gave and was directing payments of funds of the bank against uncollected checks. That was a misapplication of checks. No excuse of any kind or description can obviate the result of that statement.

" The Court: That may be so, but I will let him say."

Here we have a view of the case as expressed by the plaintiff's counsel, apparently adopted by the court, and as I shall subsequently show, enlarged upon by the court. A payment of funds against uncollected checks is a misapplication for which there can be no excuse. When the witness attempted to state the information which he had received, upon which he had directed payment of these checks, he was stopped by the court, and the objections made by the plaintiff's counsel were sustained over exception.

Coe also testified that after August 4th, he investigated the financial condition of the Hamilton Dairy Company, and was told that they owned eight or ten creameries up around Roscoe, thirty or forty thousand milk cans valued at three or four dollars a can, and that their statement showed a net worth of over $175,000. He further stated that he relied upon information given him for his action

in August of 1920 by Fred Weiler, a director. His testimony is: " Every time a note of the Hamilton Dairy Company would come up, or any question about the Hamilton Dairy, there was never any question except on their notes, he would also say, ' Why, Paul Steffins (President of the Hamilton Dairy Co.) is all right,' he said, ' I play cards with him every other Saturday and every other Sunday,' and he said, ' Give him anything he wants, he is O. K.' "

We do not say or even intimate that Coe was telling the truth. We do say, however, that on this evidence, together with the plaintiff's contradictions and other matters, which for brevity cannot be referred to, a question was presented for the jury to determine whether Coe, in directing or permitting in the last days of the Hamilton Dairy Company its account to be overdrawn was acting in bad faith, and dishonestly, or for and in the interest of the bank; and that it was error to instruct the jury or leave them to believe that the permitting of an overdraft or the overdrawing of an account was an act in violation of law, a criminal act, or a dishonest act, or that the purpose for which such overdraft was permitted could not be explained or excused.

Now for the charge: What did the judge tell the jury?  " In accordance with the by-laws of the plaintiff bank, Coe, the cashier, was responsible for all the moneys, funds and valuables of the bank. He was obligated to faithfully and honestly discharge his duties as such cashier. He was obligated to faithfully apply and account for all the moneys, funds and valuables of the bank * * *. Coe, as cashier, had no right to pay or permit any employee of the bank to pay any check drawn upon the bank or to pay out any money of the bank on any order unless the drawer of such check or order at the time of the presentation thereof on deposit in the bank had funds sufficient to meet such check or order.  * * * .

" Uncollected checks, that is checks which had not yet

been paid, were not funds in the bank out of which checks or other orders for the payment of money could be paid. To allow customers of a bank to withdraw funds and have their checks charged up without present funds in the bank is to misapply such funds. If you find from the evidence that Coe as cashier of the plaintiff's bank permitted the funds of the bank to be paid out on checks drawn out by the Hamilton Dairy Company, and that he knew there were not sufficient funds in the bank to pay the checks, such payments were overdrafts, and if the bank sustained a loss thereby you must find that Coe misapplied the funds of the bank within the meaning of the agreement or bond, and your verdict would have to be for the plaintiff. Amounts credited to the account of the Hamilton Dairy Company by reason of the deposit of checks, did not place funds in the bank belonging to the Hamilton Dairy Company until those checks had, in fact, been collected. The defendant, however, cannot be held liable for mere errors of judgment, for carelessness or negligence on the part of Coe, because the defendant's agreement or bond did not cover such matters.

" The plaintiff must establish that Coe acted in bad faith in discharging his duty. The question is, did Coe, the plaintiff's cashier, misapply or permit to be misapplied funds of the plaintiff by paying out or permitting the same to be paid out on checks drawn by the Hamilton Dairy Company with knowledge that such payments were overdrafts and that the Hamilton Dairy Company had no funds on deposit with the plaintiff sufficient to pay these checks. If your answer to this question is in the affirmative, that is, if you conclude from the evidence that these matters have been established to your satisfaction, you may then find that there was a dishonest misapplication of the plaintiff's funds by Coe."

What did the judge mean when he told the jury that the defendant cannot be held liable for errors of judgment,

carelessness or negligence on the part of Coe, and that the plaintiff must establish bad faith in discharging his duty? He meant this, for he said so. That if Coe permitted overdrafts and the bank sustained loss, he misapplied the funds within the meaning of the bond; that if Coe misapplied the funds by permitting them to be paid out with knowledge that such payments were overdrafts, the jury might find a dishonest misapplication by Coe. In other words, the mere fact of knowingly permitting an overdraft could constitute a dishonest misapplication. The use of the words " dishonest " and " bad faith " in the subsequent requests to charge, received no other interpretation or meaning as applicable to this case.

" Mr. Elder: I request your Honor to charge that this bond does not insure against any omission unless that omission be either dishonest or criminal.

" The Court: I think I have already covered that, and I charge it again."

That the charge is fairly to be taken as I have here stated it is further supported by a request to charge, to which no exception was taken.

" Mr. Elder: I request your Honor to charge that if Coe believed he acted right, the verdict must be for the defendant.

" The Court: Declined."

There is one other error in the case which I think requires reversal. When Coe was on the stand he was asked in cross-examination:

" Q. Did you know during all of the time, say from the beginning of the year 1920, down to the 16th of August, that the payment of checks against funds not in the bank and against uncollected checks was a violation of law? "

Over objection and exception the witness answered: " Why, I don't know.

" Q. Did you know at any time prior to August the

16th that the payment of money, of funds of the bank against uncollected checks, were a violation of law?

" Mr. Elder: Your Honor, it was not a violation of law.

" The Court: Mr. Elder, that is improper. Whatever objection you have to make, make it an objection.

" Mr. Elder: I object to it.

" The Court: Objection overruled.

" Mr. Elder: Exception.

" A. I didn't know, no.

" Q. You have been a cashier how long?

" A. About three and one-half years."

The bond, or undertaking offered in evidence, and which the jury had before it, refers to fraud, dishonesty, forgery, theft, embezzlement, misapplication or misappropriation or any other dishonest or criminal act. This category is made up almost entirely of criminal acts. Forgery, theft, embezzlement are crimes. Fraud may be a crime; likewise dishonest misapplication or misappropriation. When, therefore, the plaintiff was suing on Coe's act as coming within this category, the jury could reasonably have understood that the words " violation of law " referred to a criminal act. Personally, I do not see how they could have understood anything else.

When, therefore, counsel requested the court to charge, " I request your Honor to charge that to pay out funds of the bank on checks drawn against uncollected deposits is not a crime under the National Banking Act," and the court declined, this was error in my judgment on the crucial point in the case, and one which allowed the jury to believe that such an act was criminal. The court does not decline to charge it on the ground that it has nothing to do with the case or that there is no claim that Coe's acts were criminal. The jury were not told why the court declined to charge it.

The request was a correct statement of the law as applicable to National banks.    (R. S. § 5209, amd. Septem-

ber 26, 1918; 40 Stat. 972; Comp. Stat. § 9772; *Coffin* v. *United States,* 162 U. S. 664; *United States* v. *Heinze,* 218 U. S. 532.)

The appellant has made quite an argument on the question of notice. We have carefully considered this point and are of the opinion that notice was given in time within the terms of the policy. It might have been a question for the jury, but we cannot hold as matter of law on the evidence that notice was not given in time.

For the reasons here stated, the judgments below should be reversed and a new trial granted, costs to abide the event.

CARDOZO, POUND and LEHMAN, JJ., concur; HISCOCK, Ch. J., and MCLAUGHLIN, J., dissent; ANDREWS, J., absent.

Judgments reversed, etc.