(136 So. 800)

**LOUIS PIZITZ DRY GOODS CO. v. FIDELITY & DEPOSIT CO. OF MARYLAND.**

6 Div. 786.

Supreme Court of Alabama.

Oct. 8, 1931.

R. B. Evins, of Birmingham, for appellant.

London, Yancey & Brower and J. K. Jackson, all of Birmingham, for appellee.

GARDNER, J.

The suit is upon a fidelity bond, and the question presented for decision is whether or not a disbursement of the funds of the employer by the employee in disregard of the known rules of the former, but innocently so far as regards any intent to injure or defraud, is a willful misapplication thereof within the meaning of the language of the bond, the substance of which is set out in count 1 of the complaint appearing in the report of the case.

We have examined with much care the authorities relied upon by counsel for appellant (among them: May v. N. Y. Motion Picture Corporation, 45 Cal. App. 396; 187 P. 785; Green v. U. S. Fid. & Guar. Co., 135 Tenn. 117, 185 S. W. 726; Buchanan v. Cook, 70 Vt. 168, 40 A. 102; Anderson v. Horn, 116 N. Y. 336, 22 N. E. 695; People v. Brooks, 1 Denio (N. Y.) 457, 43 Am. Dec. 704; I. C. R. R. Co. v. Leiner, 202 Ill. 624, 67 N. E. 398, 95 Am. St. Rep. 266; U. S. v. Britton, 107 U. S. 655, 2 S. Ct. 512, 27 L. Ed. 520), defining the meaning of the words "wilful" and "misapplication" as used in the various connections there treated, and have considered the argument in the light of the well-recognized rule that doubtful language in instruments of this character is to be construed most favorably to the insured. 25 Corpus Juris, 1091; Ill. Surety Co. v. Donaldson, 202 Ala. 183, 79 So. 667.

This rule, however, as has been well said, is not to be carried to the extent of construing such a contract contrary to the manifest intention of the parties, for such intention is the "pole star" of all rules of construction. 25 Corpus Juris, 1092. The above-noted authorities do not concern a contract as that here presented, and, from our examination of those authorities dealing with analogous situations, we are not persuaded the trial court incorrectly ruled in the construction of the instrument here in question. The meaning of a word is largely to be determined by the connection in which it is used (Street v. Treadwell, 203 Ala. 68, 82 So. 28), and a fidelity bond is to be construed according to its context. 25 Corpus Juris, 1092.

We are rather persuaded that the well-known and ancient maxim, noscitur a sociis —the meaning of a doubtful word may be ascertained by reference to the meaning of words associated with it—broader in its scope than the kindred maxim ejusdem generis (State v. Western Union, 196 Ala. 570, 72 So. 99; 46 Corpus Juris 496), is here of controlling influence, and has, we think, been so considered by the courts construing like bonds.

A few of the cases more directly in point will be noted. A statute of the state of Texas (Rev. St. 1911, art. 574) required the execution of a bond by the cashier of a state bank, "conditioned to pay the bank such pecuniary loss as the bank may sustain of money or other valuable securities embezzled, wrongly abstracted or wilfully misapplied by said officer." The suit was upon a bond so conditioned, and the court, speaking of the proper meaning of the words "willful misapplication," said: "Willful misapplication as described in the statutes means a misapplication, willfully and unlawfully made by one

388

or more of the officers of the bank, of the money, funds, or credits of the bank, and done with intent to injure the bank, and the funds so misapplied must be converted to the use of the officer or officers making such misapplication or to the use of some other person than the bank." Maryland Casualty Co. v. Farmers' State Bank (Tex. Civ. App.) 258 S. W. 584, 586.

The case of Chapman, Commissioner of Banking, v. Nieman et al. (Tex. Civ. App.) 276 S. W. 302, was of like character and to like effect. The case of Kansas Flour Mills Co. v. American Surety Co., 98 Kan. 618, 158 P. 1118, is here much in point, as the pertinent language of the bond was similar to that in the instant case, with the exception that just preceding the word "misapplication" the word "wilful" is omitted, an omission that by no means lessened the weight of the authority as here applicable. Answering the argument that the word "misapplication" speaks for itself, and includes applications merely amiss and not vicious because of moral turpitude, the court said:

"The court is not willing to accept this interpretation of the bond. All the words used should be considered as employed for a purpose, and the collocation should be taken into account in arriving at their meaning. So considered, it is plain the purpose of the bond was to cover all kinds of depravity. Some kinds were named in terms having fixed and definite legal meanings—'fraud,' 'forgery,' 'theft,' 'embezzlement.' In order that other kinds might not sift through this enumeration, words more general in their signification were inserted—'dishonesty,' 'wrongful abstraction.' The term 'wrongful abstraction' does not sum up all that goes before it, but fills some of the gaps in what goes before, and the word 'misapplication' was manifestly employed to attain the same end. If this were not true, we would have one field of conduct, embracing many varieties, covered with great particularity and in the utmost detail, while another and distinct field, embracing just as many varieties of innocent conduct—error, omission, mistake, oversight, neglect—was covered by a single word, 'misapplication,' which is ambiguous. The word is commonly used to denote use of money or property improperly, illegally, or wrongfully in the corrupt sense. Under these circumstances the court concludes the word was inserted to complete the thought and purpose indicated by the preceding words, and not to introduce and deal with a new class of acts."

We have thus freely quoted from the Kansas court as the language, tersely and concisely stated, so clearly states our view. Other courts have likewise approved the decision. The Mississippi court, in the recent case of Seelbinder v. American Surety Co.,

155 Miss. 21, 119 So. 357, with language of the bond practically identical with that in the instant case, gave full application to the Kansas decision, and so likewise with the South Carolina court in Salley v. Globe Indemnity Co., 133 S. C. 342, 131 S. E. 616, 43 A. L. R. 971. The New Jersey court in Roseville Trust Co. v. American Surety Co., 91 N. J. Law, 588, 103 A. 182, 183, reached a like conclusion as to the meaning of those words in a fidelity bond, saying: "The funds of a trust company are 'willfully misapplied' by its teller when he converts them to his own use or benefit, or to the use and benefit of some one other than the trust company, with intent to injure and defraud the trust company." The case from the New York court of First National Bank v. National Surety Co., 243 N. Y. 34, 152 N. E. 456, 459, 46 A. L. R. 967, cannot be said to constitute an authority either way, due to the addition of the words in the bond, "or any other dishonest or criminal act," following the words "misapplication or misappropriation," unless it be, if that may be considered a matter of any importance, that the parties themselves by the language used indicated their construction of these words in harmony with that given by the courts.

Appellant cites Federal Surety Co. v. State of Oklahoma, 116 Okl. 186, 243 P. 936, 938, 46 A. L. R. 973, where the language of the bond was similar to that here considered and where recovery was allowed, stressing the fact that the court made no mention of a necessity to show an intent to injure or defraud. But a reading of the opinion discloses that such a discussion would have been entirely superfluous and useless, for the fraudulent conduct of the bank official was too glaring and well established to need comment, further than to call from the court the satirical remark: "When the Pensacola bank was taken over by the bank commissioner of Oklahoma, there was found to be cash on hand to the extent of $6.62, and the record fails to disclose whether this sum was left there designedly or was overlooked by the Browns and Harrisons, but with this phase of the situation, we are not called upon to deal."

But we forego further discussion. The authorities which we consider more directly in point fully support the ruling of the trial court, while we find no analogous case to the contrary. The words "wilful misapplication" are so closely associated with the words preceding as to take color therefrom, and we think, in line with the current authority elsewhere, that they were so inserted to complete the thought and purpose indicated by these preceding words, and, as stated by the Kansas court, "not to introduce and deal with a new class of acts."

Our conclusion is therefore that the trial court correctly ruled, and the judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.