STACY, C. J., not sitting.
On 1 December, 1927, the defendants, Fairley Brothers, deposited with the plaintiffs two drafts, one in the sum of $3,792.11, and the other in the sum of $2,607.89. Both these drafts were payable to the order of the plaintiff, and were drawn by Fairley Brothers — one on Aragon Baldwin Cotton Mills, and the other on Autz and Company. The account of defendants, who were customers of the plaintiff, was credited with the amount of said deposit, to wit: $6,400. Both drafts were duly forwarded by plaintiff for collection. The draft on Autz and Company for $2,607.89, was paid on its presentation to the drawee. The draft on Argon Baldwin Cotton Mills for $3,792.11, was duly presented for payment to the drawee and dishonored by nonpayment. This draft was promptly returned to plaintiff, and was charged to the account of Fairley Brothers on 10 December, 1927, with the result that said account was overdrawn on said day, as shown by the books of the plaintiff. The defendants, Fairley Brothers, did not have sufficient funds to their credit with the plaintiff on 10 December, 1927, for the payment of the dishonored draft. They subsequently made payments from time to time on the overdraft shown on the books of the plaintiff, reducing the amount thereof to $2,181.42. Fairley Brothers are now indebted to the plaintiff by reason of said overdraft in the sum of $2,181.42, with interest thereon from 1 December, 1927. There was no evidence at the trial tending to show that the defendants, Fairley Brothers, made any false and fraudulent representations to the plaintiff at the time they deposited the said drafts, and thereby induced plaintiff to give them credit for the amount *Page 138 
of their deposit. There was evidence tending to show that Fairley Brothers represented to plaintiff that the drafts were good and would be paid upon presentation.
The defendant, Charles Raymond Storey, was the cashier of plaintiff on 1 December, 1927. As such cashier he credited the account of Fairley Brothers with the amount of the two drafts deposited with plaintiff by them on said day. Between the 1st and the 10th of December, 1927, the said defendant, as cashier of the plaintiff, paid checks drawn on plaintiff by Fairley Brothers and charged same to their account. The books of the plaintiff showed that by reason of the deposit of $6,400, made on 1 December, 1927, Fairley Brothers had sufficient funds to their credit with plaintiff for the payment of said checks. When the draft for $3,792.11 was returned unpaid, the defendant, Charles Raymond Storey, charged the same to the account of Fairley Brothers, because of their liability as drawers of the dishonored draft, with the result that said account was overdrawn on 10 December, 1927. The defendant immediately notified Fairley Brothers that their draft on Aragon Baldwin Cotton Mills had not been paid, and demanded that they pay the same to the plaintiff, as holder of the draft. Fairley Brothers have made payments on their overdraft from time to time, thus reducing the amount thereof to $2,181.42.
Charles Raymond Storey, as a witness for the plaintiff, testified as follows: "I was cashier of the Bank of Peachland in December, 1927. Fairley Brothers presented for deposit to their credit a draft for $3,792.11 on Aragon Baldwin Cotton Mills of Whitmire, S.C. There was no bill of lading attached to the draft. They brought it in as a regular deposit, and I gave them credit for it. I permitted them to check against it immediately. This was on 1 December, 1927, and the draft came back on 10 December, 1927. I charged the draft to their account. On 28 December, 1927, Fairley Brothers gave me two drafts aggregating the sum of $1,000. Both these drafts were paid and the proceeds credited on the draft which had been returned. They gave me other drafts from time to time which were not paid. On 9 February, 1928, I drew on Fairley Brothers for $2,792.11. This draft was not paid. At their meeting on 12 January, 1928, I made up a financial statement for the directors. I did not tell them about the $2,792.11, then owing by Fairley Brothers on their unpaid draft dated 1 December, 1927. They asked me about overdrafts, and I showed them the overdrafts. I did not mention the Fairley matter as I did not consider the amount due by them on their unpaid draft as an overdraft of their account. I did not try to keep anything from the directors. I kept on the books of the bank a complete record of the Fairley transaction. The *Page 139 
bank made good money out of the account with Fairley Brothers. They bought and sold cotton. I charged them interest at the rate of 8 per cent, and 1/8 of one per cent for collecting their drafts. I did not make anything for myself out of their account. I did not fraudulently conspire with Fairley Brothers. They were customers of the bank when I became cashier. I continued to do business with them, just as its books showed the bank had done. My recollection is that Fairley Brothers told me when they deposited the drafts on 1 December, 1927, that they were good and would be paid. I had no reason to doubt that both drafts would be paid on presentation."
J. Y. Britt, as a witness for the plaintiff, testified that he succeeded Charles Raymond Storey as cashier of the Bank of Peachland. He said: "When I became cashier, Mr. Storey owned nothing to the bank, except $90.00 which he has paid. He had not tried to destroy any of the records. Not a single one of them was mutilated. I have not found anything wrong; no moral turpitude whatever. All the records kept by Mr. Storey were in good order. These records show that Fairley Brothers did a large business with the bank while Mr. Storey was cashier. This business was profitable for the bank. The entire transaction involving their draft for $3,792.11 and the payments made on the draft by them, is shown on the records made by Mr. Storey as cashier."
The defendant, United States Fidelity and Guaranty Company, executed and filed with the plaintiff a bond as surety for Charles Raymond Storey, its cashier. This bond was dated 21 December, 1927, and superseded a bond executed by the Atlantic Surety Company of Raleigh, N.C. and filed with the plaintiff on 12 January, 1927. The pertinent provisions of the bonds executed by the defendant are as follows:
 "United States Fidelity and Guaranty Company Baltimore, Maryland.
No. 48-01-1001-28 $10,000.00
Know all men by these presents:
That the United States Fidelity and Guaranty Company, as surety (hereinafter called the surety) does hereby agree to pay into Bank of Peachland, N.C. (hereinafter called employer), within ninety days after presentation of proof of loss, as hereinafter provided, the amount of any loss, not exceeding $10,000, which the employer may sustain in respect to any moneys, funds, securities, or other personal property of the employer, or for which the employer may be responsible, through any act of fraud, dishonesty, larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction, or misapplication, or any other dishonest or criminal act or omission committed by Charles Raymond *Page 140 
Storey (hereinafter called the employee) acting alone or in collusion with others, while in any position in the continuous employ of the employer, after 12 o'clock noon of the 10th day of January, 1928, but before the employer shall become aware of any default on the part of the employee, and discovered before the expiration of three years from the termination of such employment or cancellation of this bond, whichever may first happen."
Attached to the said bond is a rider, executed by the defendant, the pertinent provisions of which are as follows:
"To be attached to Fidelity Bond No. 48-01-1001-28 executed by the United States Fidelity and Guaranty Company (hereinafter called surety) dated 10 January, 1928, in favor of Bank of Peachland (hereinafter called employer) and covering Charles Raymond Storey, Peachland, N.C.
Whereas, the employer has been carrying fidelity suretyship as follows: Charles Raymond Storey, amount $10,000; surety, Atlantic Surety Company, dated 16 November, 1926.
Whereas, said fidelity suretyship, as of the effective date of the attached bond, has been canceled, or allowed to expire, or has been terminated by agreement, as is evidenced by the issuance and acceptance of the attached bond and this rider; and,
Whereas, said fidelity suretyship may provide that any loss thereunder shall be discovered, or claims therefor shall be filed, within a certain period after the final expiration, cancellation or termination thereof,
Now, therefore, it is hereby understood and agreed as follows:
(1) That the attached bond shall be construed to cover, subject to its terms, conditions and limitations, any loss or losses under said fidelity suretyship which shall be discovered after the expiration of any such period, or of no such period, after the bar of the statute of limitations, and before the expiration of the time limited in the attached bond for the discovery of loss thereunder, and which would have been recoverable under said fidelity suretyship had it continued in force, and also under the attached bond had such loss or losses occurred during the currency thereof."
There was evidence tending to show that plaintiff first received information of the loss sustained by it by reason of the nonpayment of the draft drawn by Fairley Brothers on Aragon Baldwin Cotton Mills, dated 1 December, 1927, on 7 March, 1928, and that the defendant, United States Fidelity and Guaranty Company had notice of plaintiff's claim for such loss prior to 11 April, 1928. The said defendant denied liability under the bond for such loss. *Page 141 
The issues submitted to the jury were answered as follows:
"1. Did the defendants, J. M. Fairley and F. H. Fairley, trading as Fairley Brothers, obtained credit at the Bank of Peachland on 1 December, 1927, for the draft of $3,792.11, drawn on Aragon Baldwin Cotton Mills, by false and fraudulent representations, as alleged in the complaint? Answer: Yes.
2. Did the defendant, Charles Raymond Storey, while acting as cashier of the plaintiff bank, and in collusion with Fairley Brothers, fraudulently permit the said Fairley Brothers to check against the draft for $3,792.11, before the same had been cleared and paid, in violation of the rules and instructions which had theretofore been given him by the board of directors of said bank, as alleged in the complaint? Answer: Yes.
3. Did the said Charles Raymond Storey falsely and fraudulently conceal the overdraft and indebtedness of Fairley Brothers from the board of directors of the Bank of Peachland at their meeting held on 12 January, 1928, as alleged in the complaint? Answer: Yes.
4. Did the plaintiff comply with the terms of its bonds with respect to the manner of filing its claim with the United States Fidelity and Guaranty Company, and, if not, did the United States Fidelity and Guaranty Company waive strict compliance therewith by disclaiming liability upon said bonds, as alleged in the complaint? Answer: Yes.
5. What amount, if any, is the plaintiff entitled to recover of the defendant, J. M. Fairley and F. H. Fairley, trading as Fairley Brothers? Answer: $2,181.42, with interest from 1 December, 1927.
6. What amount of damages, if any, is the plaintiff entitled to recover of the United States Fidelity and Guaranty Company on account of the bonds sued on in this action by reason of the wrongful conduct of Charles Raymond Storey? Answer: $2,181.42, with interest from 1 December, 1927."
On the foregoing verdict, it was ordered, considered and adjudged by the court:
"1. That the plaintiff, Bank of Peachland, recover of the defendants, J. M. Fairley and F. H. Fairley, partners trading under the firm name of Fairley Brothers, the sum of $2,181.42, with interest on said amount from 1 December, 1927, until paid, together with the costs of this action; and the jury having found by their verdict that the indebtedness of the defendants, J. M. Fairley and F. H. Fairley, was incurred by false and fraudulent representations, it is ordered and adjudged by this court that if an execution against the property of the defendants, J. M. Fairley and F. H. Fairley, is returned unsatisfied, then and in that event, the said Bank of Peachland shall be entitled to an execution against the persons of the said J. M. Fairley and F. H. Fairley. *Page 142 
2. That the Bank of Peachland recover of the defendant, the United States Fidelity and Guaranty Company, the sum of $10,000, to be discharged upon the payment of the sum of $2,181.42, with interest on said amount from 1 December, 1927, until paid, together with the costs of this action to be taxed by the clerk."
From this judgment, the defendant, the United States Fidelity and Guaranty Company, appealed to the Supreme Court.
The defendants, Fairley Brothers, did not appeal to this Court from the judgment rendered against them in the Superior Court. In their answer to the complaint, they denied the allegations therein that they induced the plaintiff by false and fraudulent representations to credit their account with the amount of their draft, dated 1 December, 1927, for $3,792.11, or to pay their checks drawn on plaintiff before their said draft was collected by the plaintiff. They admit that the draft was dishonored by nonpayment upon its presentation to the drawee, and that by reason of such dishonor, they were liable as drawers of the draft to the plaintiff for its amount. They did not resist the demand of the plaintiff for judgment against them in this action for the balance due on the draft. We fail to find in the record any evidence tending to sustain the allegations of the complaint involved in the first issue. The answer in the affirmative to this issue supports the order in the judgment for the issuance of an execution against the persons of these defendants. It does not, however, affect the right of the plaintiff to recover of the defendant, United States Fidelity and Guaranty Company, in this action.
There was no judgment at the trial of this action in the Superior Court against the defendant, Charles Raymond Storey. No issue involving his liability to plaintiff for any specific sum of money was submitted to the jury. For this reason, this defendant did not appeal to this Court. We fail to find in the record any evidence tending to sustain the allegations in the complaint involved in the second and third issues. We cannot, however, disturb the affirmative answers to these issues insofar as they affect the defendant, Charles Raymond Storey. They do not, however, affect the right of the plaintiff to recover of the defendant, United States Fidelity and Guaranty Company in this action.
In the absence of any evidence at the trial of this action, tending to show that the plaintiff has sustained a loss of its money or other personal property, through an act of fraud, dishonesty, larceny, theft, embezzlement, forgery, misappropriation, wrongful abstraction or *Page 143 
misapplication or other dishonest or criminal act or omission committed by its cashier, Charles Raymond Storey, during the period covered by its bond, the defendant, the United States Fidelity and Guaranty Company, is not liable to plaintiff in this action as surety for said cashier. The bond executed by the defendant as surety for the cashier of the plaintiff does not cover a loss sustained by it solely by reason of an overdraft permitted by its cashier, although without authority of its board of directors. The cashier is civilly but not criminally liable for such loss. N.C. Code of 1931, sec. 221 (1).
In First National Bank of Edgewater v. National Surety Company,243 N.Y., 34, 152 N.E. 456, 46 A.L.R., 967, it was held that the act of a bank cashier in permitting an overdraft by a customer through an honest mistake of judgment, or to help the bank, or in the ordinary course of the bank's business, without any dishonest intent or purpose, is not within a fidelity policy insuring against loss through the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misapplication or misappropriation, or other dishonest or criminal act or omission of the cashier. We think the cited case was well decided.
There was error in the refusal of the trial court to allow defendant's motion for judgment as of nonsuit at the close of the evidence. For this reason, the judgment against the appealing defendant is
Reversed.
STACY, C. J., not sitting.