STATE EX REL. HUNDLEY, RECEIVER *v.* JAY ET AL.

[No. 15,939. Filed November 2, 1937.]

*Robert M. VanAtta,* for appellant.

*Bowers, Feightner & Bowers,* and *Arthur J. Palmer,* for appellees.

LAYMON, P. J.—This is an action by the receiver of

the Citizens Bank of Jonesboro, Ind., against Watson D. Jay and the American Surety Company of New York, to recover damages for the alleged breach by Jay, as cashier of said Citizens Bank, of a bond executed by appellees in favor of said bank.

The complaint, in one paragraph, alleged in substance: That the Citizens Bank of Jonesboro, Ind., was organized as a private bank under the laws of the state of Indiana long prior to January 2, 1926, and continued to operate as such bank until the 16th day of September, 1930, when, because of insolvency, it was closed and appellant appointed receiver; that on the 2nd day of January, 1926, appellee Jay was employed as cashier for said bank and, at the time, executed his bond in favor of the bank in the sum of $10,000, with the appellee American Surety Company of New York as surety; that Jay entered upon his duties as cashier for said bank and continued to act as such until the date of its closing; that, by the terms of the bond, the appellees bound themselves to pay the bank such pecuniary loss, not exceeding $10,000, as said bank shall have sustained of money or other personal property by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misapplication on the part of the employee, directly or through connivance with others, while in any position or at any location in the employ of said employer; that said bond was in full force and effect during all the times herein referred to; that said bank sustained pecuniary loss within the terms of said bond by the misconduct of appellee Jay, as follows, to wit: "That on the 9th day of July, 1930, defendant herein, Watson D. Jay, as cashier of relator's bank, made a loan to Edward Bloch in the sum of $5,-181.43. That the said Edward Bloch at said time was an officer of said bank, to wit: president of said relator's bank at said time; that the total capital stock of said

relator's bank was $10,000 at said time and that the total amount that could lawfully have been loaned said Edward Bloch, as an officer of said relator's bank, was 30 per cent of the total capital stock of said relator's bank, or $3,000; that the said loan was in excess of the total amount authorized by law for relator's bank to loan an officer thereof and was in direct violation of law and a breach of the terms of the contract and bond herein sued upon. That the said Edward Bloch executed his promissory note on said July 9, 1930, payable to the Citizens Bank of Jonesboro, Ind., calling for said sum of $5,181.43, together with interest thereon at the rate of 6 per cent per annum from date until paid. Said note was payable on demand; that said note did not have the written consent of the board of directors of said bank endorsed thereon as required by law; that upon the receipt of said note, said defendant, Watson D. Jay, as cashier of said bank, delivered and paid over unto the said Edward Bloch said sum of $5,181.43."

The appellees filed an answer in four paragraphs, the first in general denial, the second alleging that the cashier did not pay the sum of $5,181.43 charged in the complaint to said Edward Bloch and did not loan said sum to said Bloch. The third paragraph of answer pleaded the following provision in the bond: "That the surety shall not be liable hereunder for any default the proceeds of which shall have been applied to the payment to the employer of a pre-existing debt." Appellees averred that the proceeds of the default alleged in said complaint were in fact applied to the payment of a pre-existing debt. The fourth paragraph of answer alleged that the note evidencing said loan was filed by the receiver as a claim against the estate of said Bloch, deceased; that said receiver was paid thereon the sum of $158.67 as the distributive share in said estate; that said receiver had filed said note as a claim in the re-

ceivership of the Spurgeon Baum Company and received the sum of $1,022.81 as the distributive share thereon; and that the filing of such claims in said estate and in said receivership constituted an election of remedies on the part of the receiver.

To each the second, third, and fourth paragraphs of answer the appellant filed a reply in general denial. On request the court made a special finding of facts and stated its conclusions of law thereon. The finding of facts and conclusions of law were favorable to appellees, and judgment was rendered accordingly. From this judgment appellant appeals and assigns as error that the court erred in each of its six conclusions of law. We deem it unnecessary to set out in detail the conclusions of law. The correctness of said conclusions of law stated on the special finding of facts is the only question presented for review.

The court found, so far as is pertinent here: That the Citizens Bank of Jonesboro, Ind., was organized and continued to operate as a private bank with capital stock in the amount of $10,000, consisting of 250 shares, each share having a par value of $40; that Edward Bloch was at all times in question the duly elected, qualified, and acting president and actively in charge of said bank; that he owned 127 shares of capital stock; that one Ben Bloch, brother of Edward Bloch, owned 49 shares of capital stock; that on January 2, 1926, Edward Bloch, as president of said bank, employed the appellee Watson D. Jay as cashier; that said Jay continued to act as cashier of said bank until September 16, 1930, when a receiver was appointed therefor; that at all times during which the said Jay was cashier of said bank the said Edward Bloch was president of said bank; that the said Jay at all times accepted the orders, instructions, and directions of the said Bloch in performing his duties as cashier; that on January 2, 1926, ap-

pellee Jay executed his bond to the bank, as such cashier, in the sum of $10,000, with appellee the American Surety Company of New York as surety thereon, which bond provided, among other things, that the obligors pay to the bank such pecuniary loss, not exceeding $10,000, as the bank shall have sustained of money or other personal property by an act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misapplication on the part of the employee, directly or through connivance with others, while in any position or at any location in the employ of the employer, provided, however, [clause 4] that the surety shall not be liable hereunder for any default the proceeds of which shall have been applied to the payment to the employer of a pre-existing debt; that the bond is not a statutory bond and that no bond is required from cashiers of private banks by the statutes of the state of Indiana; that the premiums were paid on said bond, and said bond was in force from January 2, 1926, to September 16, 1930; that prior to July 9, 1930, Edward Bloch had executed several checks drawn on said bank in the total sum of $5,181.43; that at the time of the execution of said checks Bloch did not have any checking account in said bank; that on the presentation of said checks for payment, appellee Jay paid said checks, and said checks were carried as cash items by said bank; that Bloch thereby became indebted to said bank in the sum so paid; that on receipt of said checks, and after their payment, appellee Jay called Bloch and notified him that said checks had been presented to said bank and paid, whereupon Bloch stated to Jay that he would pay said debt; that thereafter, on the 9th day of July, 1930, Bloch came to the bank and executed and delivered to said bank his promissory note in the principal sum of $5,181.43, being the total amount of the checks paid; that said note did not have the written con-

sent of the board of directors endorsed thereon; that said note was executed and delivered to said bank by Bloch in payment of the indebtedness owing said bank by reason of the payment of his checks; that on July 9, 1930, when said note was so executed and delivered to said bank by said Bloch, no money was loaned or paid to Bloch by said bank or by the cashier thereof, and, on execution and delivery of said note to said bank, Bloch received only those checks which had theretofore been paid by said bank. The court further found that prior to the transactions heretofore referred to Bloch had, on numerous occasions, executed checks drawn on the Citizens Bank of Jonesboro, Ind., without sufficient funds in said bank to pay his checks; that on each of these occasions said checks were paid; that, after payment, appellee Jay notified Bloch of the fact that said checks had been paid and that Bloch did not have funds on deposit to take care of same; that on each of said former occasions referred to Bloch would thereupon come to said bank and pay in and deposit sufficient funds to take care of said checks so paid; that said former transactions were made with the knowledge and without objections on the part of the directors of said bank; that Jay had no financial interest in said checks or the sums paid thereon and received no part of the money paid out on account thereof; that Jay, at the time the checks in question were paid and on the date the note was executed and delivered to said bank, had been advised by Bloch that Bloch had a financial worth of $75,000; that Jay knew that said Bloch was engaged in the mercantile business at Gas City and Anderson, Indiana; that Jay knew that Bloch owned 127 shares of stock in the bank and also owned stock in the bank at Gas City, Indiana; that the said Jay at all of said times thought that the said Bloch was financially responsible; that the receiver of said bank filed the note in question in a receivership of

the Spurgeon Baum Company and received payment thereon in the sum of $1,022.81 and also filed said note as a claim against the estate of said Edward Bloch and received thereon the sum of $462.07; that said bank has sustained a pecuniary loss, by reason of the payment of the checks and acceptance of the note, in the sum of $5,496.00.

Appellant contends that the loan of the sum of $5,181.43 to Edward Bloch, while he was president of the Citizens Bank, by appellee Jay, as cashier, was an excess loan of funds of the bank in violation of the statute and constituted a breach of the bond. The statute referred to reads: "No bank organized under the provisions of this act, nor any of its officers acting for it, shall loan any of the funds of said bank in any amount exceeding 30 per cent of the capital stock of said bank to any officer or officers thereof." Section 3936 Burns 1926; section 18-2712 Burns 1933; section 8040 Baldwin's 1934.

The court specifically found that at the time the note was executed and delivered to said bank by Bloch, no money was loaned or paid to said Bloch by the bank or by the cashier thereof; that the note was executed and delivered to said bank by Bloch in payment of the indebtedness owing the bank by reason of the payment of said checks drawn on the bank by Bloch. It appears that the note (which is evidence of a debt) was given in payment of a pre-existing debt; that the pre-existing debt was occasioned by the payment of Bloch's checks; and that the pecuniary loss suffered by the bank did not result primarily from the execution and delivery of the note by Bloch and the acceptance thereof by Jay, but from the payment of Bloch's checks. It is apparent, under such circumstances, that no pecuniary loss could be attached to the mere execution, delivery, and

acceptance of the note, and, by reason thereof, no liability would be cast upon the cashier in such transaction.

Appellant urges that the payment by the cashier of the checks drawn on the bank by Bloch, when he had no funds in the bank against which to draw said checks, was a breach of the bond.

Appellees insist that the complaint is drawn strictly on the theory, and that appellant proceeded in the trial court on the theory, that a loan was made on July 9, 1930, by Jay, as cashier, to Bloch and liability attached under the provisions of the bond solely upon the ground that a loan was made in violation of law; that appellant is bound by that theory on appeal; that the court specifically found that no such loan was made and the evidence to sustain such finding not being challenged, appellant cannot recover.

It may be said that there was no issue in this action involving any breach of the bond on the part of the cashier in permitting the president to overdraw his account, but in view of appellant's further contention that the loan was actually made at the time the checks were paid by Jay, the cashier, and that the note given subsequent thereto was evidence thereof, a further consideration of the case is required.

It is evident that the loss for which recovery is sought was occasioned by the cashier in permitting Bloch to overdraw his account and not by virtue of the acceptance of Bloch's note. The irregularity on the part of the cashier, as disclosed by the findings, was the receiving and paying of the several checks of Bloch in excess of his account with the bank. Assuming that the act of the cashier in permitting the president to overdraw his account was in issue, we are unable to agree with appellant's contention that such transaction amounted to a loan within the meaning of the statute upon which appellant relies.

Answering appellant's contention that the payment by the cashier of the checks drawn on the bank by Bloch, when he had no funds in the bank against ██ which to draw said checks, was a breach of the bond, it must be borne in mind that the bond in question is not a statutory bond, due to the fact that the bank in question was a private bank and that the private banking act of Indiana did not require the cashier to give a bond. Liability, if any, must be confined to the fair and reasonable meaning of all of the provisions contained therein. *Sparta State Bank* v. *Myers et al.* (1931), 202 Ind. 553, 177 N. E. 258. The bond, by its provisions, indemnifies against "pecuniary loss . . . sustained . . . by an act or acts of *fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or willful misapplication* on the part of the employee, directly or through connivance with others. (Our italics.) Upon examination of the findings we fail to find any fact showing that any deceitful, unfaithful, or dishonest conduct on the part of the cashier was practiced by him in paying the checks, which action created the indebtedness from which appellant suffered pecuniary loss. It was the purpose of the bond, as expressed by its plain and unequivocal provisions, to indemnify the bank against loss arising from fraud or dishonesty on the part of the cashier. The surety company did not undertake to guarantee the contractual indebtedness of Bloch to the bank. The term "dishonesty" in its ordinary meaning would include an element of deceit, bad faith, or dishonest conduct upon the part of the person charged. The mere act of paying the checks, resulting in an indebtedness to the bank, and this alone, without any other intent or purpose, would not constitute dishonesty within the meaning of the term as used in the provisions of the bond. There may or may not have been bad faith on the part of the cashier in

discharging his duty. Such act may have been an error of judgment or injudicious exercise of discretion on his part, for which, under the terms of the bond, there could be no liability. The findings are silent as to any fact disclosing an element of bad faith on the part of Jay, or as to his knowledge of any unlawful purpose on the part of Bloch at the time the checks were paid. It may further be pointed out that, so far as the findings disclose, the cashier may have paid the checks with the expectation that they would be made good by the drawer. In fact, a strong inference is deducible to this effect from the finding that Bloch had, on numerous occasions prior to the time in question, executed checks drawn on this bank without sufficient funds to pay said checks and that on each of said occasions said checks were paid; that after payment Jay notified Bloch of the fact that said checks had been paid and that Bloch did not have funds on deposit to take care of the same. On each of said former occasions referred to Bloch would thereupon come to the bank and pay in and deposit sufficient funds to take care of said checks so paid; that said former transactions were made with the knowledge and without objections on the part of the directors of said bank.

Appellant further contends that the act of Jay, as cashier, in cashing the checks of Bloch, amounted to a wrongful abstraction or willful misapplication within the meaning of these terms as used in the bond and amounted to a breach of the bond. In the cases of *First Nat. Bank of Edgewater, N. J.* v. *National Surety Co.* (1926), 243 N. Y. 34, 152 N. E. 456; *Parker* v. *Sprague* (1927), 193 Wis. 338, 214 N. W. 361; and *Bank of Peachland* v. *Fairley* (1932), 202 N. C. 136, 162 S. E. 229, the courts were concerned with the liability on a bond conditioned as the bond in question, with substantially similar facts. It was held that the act of a

bank cashier in permitting an overdraft through an honest mistake of judgment, or to help the bank, or in the ordinary course of the bank's business, without any dishonest intent or purpose, was not within a fidelity policy insuring against loss through the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misapplication or misappropriation, or other dishonest or criminal act or omission of the cashier.

It may further be pointed out that there was no specific charge in the complaint of either wrongful abstraction or willful misapplication. We conclude that the findings fail to disclose that the cashier breached any of the provisions of the bond.

There are other questions presented, but in view of our conclusion heretofore reached, we deem it unnecessary to discuss them. There being no error in the conclusions of law, the judgment of the trial court is affirmed.