120 So.2d 748

Eddie JEMISON

v.

STATE.

1 Div. 807.

Court of Appeals of Alabama.

Jan. 26, 1960.

Rehearing Denied Feb. 23, 1960.

582

MacDonald Gallion, Atty. Gen., and John G. Bookout, Asst. Atty. Gen., for the State.

Maurice A. Downing, Mobile, for appellant.

CATES, Judge.

Jemison stands convicted on an indictment charging him with the possession of marijuana. Code 1940, T. 22, § 256. The trial judge sentenced him to sixteen years imprisonment.

The tendency of the State's evidence was: January 15, 1959, three law enforcement officers (one Federal, one State and one municipal) went to Jemison's home near Daphne in Baldwin County and dis-

covered (1) several sacks of dried "plant material" in his corn crib; (2) a small portion of the same substance in a brown paper sack in Jemison's truck; and (3) some more in brown paper sacks in his house.

Chemical analysis showed this substance to be marijuana. The material in the brown paper bags found in the house and truck had apparently been manipulated or "manicured." That in the truck was hidden in the springs in the back of the seat. The defendant, at the time of the raid, claimed that the material found in his corn crib was being kept for hog feed.

■ Several of the witnesses described the material as "marijuana," to which objection was taken, because testimony of the State toxicologist had not at that time been introduced to establish the identity of the substance. Strictly speaking, of course, such a description by a nonexpert is conclusionary and improper. However, we think it was error without injury to permit the witness to describe the substance as such, since the testimony was later connected up with the toxicologist's opinion of its identity.

The statute in this case provides as follows:

"It shall be unlawful for any person to possess, transport, deliver, sell, offer for sale, barter, or give away in any form whatever in this state, any marijuana, cannabis Americana, or cannabis Indica, or any compound or mixture containing any marijuana, cannabis Americana or cannabis Indica, or any derivative therefrom or thereof or any cigar or cigarettes made of or containing any marijuana, cannabis Americana or cannabis Indica."—Code 1940, T. 22, § 256.

■ The indictment is alternative and charged Jemison "did, possess, transport, deliver, sell, offer for sale, barter, or give away marijuana, cannabis Americana, or cannabis Indica, or a compound or mixture

containing marijuana, cannabis Americana or cannabis Indica, against the peace and dignity of the State of Alabama."

The trial court stated that, since the State had—in the solicitor's opening statement to the jury—elected to prove only possession of the marijuana, the defendant was not entitled to adduce proof that a man who presumably had grown the weed owed Jemison money.

We do not wish to be committed to the proposition that an indictment may be amended merely by the State's opening statement. However, the ruling of the trial court was proper, since the only proof made by the State in its case in chief was that the transaction with which Jemison was charged was solely one amounting to possession. Hence, what other parties had done with the marijuana in the past was not relevant to the issue shown by the State's evidence. In Marshall v. State, 18 Ala. App. 526, 93 So. 380, 381, we find:

"As to what other parties had formerly owned and operated the still was entirely immaterial. Admitting that the other parties were alike guilty, this would not exculpate the defendant."

We consider the motion of the defendant's counsel that the State be required to elect that it stood simply on possession was properly overruled in view of Code 1940, T. 15, § 249, which provides:

"When offenses are of the same character, and subject to the same punishment, the defendant may be charged with the commission of either in the same count in the alternative."

The following quotation from Herring v. State, 16 Ala.App. 98, 75 So. 646, 647, applies here:

" * * * when the evidence is all in for the state, and it discloses the fact that two or more offenses have been proven, the state will be required to elect; * * * But where there is but one transaction proven, and the de-

fendant is only called upon to meet the proof as to one set of facts which may relate to each allegation in the indictment, the reason for the rule disappears and the rule with it.

"* * * The court did not err in overruling the defendant's motion for an election. Only one act was testified to * * * by the state, * * *"

Jemison contends that a photograph of the marijuana at the Fairhope police station was inadmissible, since (a) the marijuana was not found at the Fairhope police station but in Jemison's barn, truck and house, and (b) because the witness who identified the photograph of the subject marijuana in it purportedly testified that the contraband was not in the identical condition in which it was found.

From the examination of Mr. Coley, a criminal investigator for the State, we excerpt:

"Mr. Hendrix: The state would like to introduce this picture in evidence, showing the plant material taken from the premises of Eddie Jemison, for the purpose of identification.

"Mr. Chason: I would like to ask the witness a question or two—

"Q. You are testifying that this is the way that this stuff looked when you first found it? A. No sir—

"Q. It had been moved? A. It had been moved.

"Q. Had been handled and re-arranged? A. Yes, sir.

"Mr. Hendrix, Continues.

"Q. It is still in the same containers—

"Mr. Downing: We object.

"The Court: Yes—

"Mr. Chason: It had been taken from the premises where it was found?

"A. Yes sir.

"Q. (By Mr. Chason) It had been handled by you four men and re-arranged and stacked as you placed it here before the picture was made? A. When you say 're-arranged' you mean the containers?

"Q. (Mr. Chason) This is not an accurate representation as it appeared at the scene? A. No sir.

"Mr. Chason: We object to the introduction of the picture.

"The Court: Overrule the objection.

"Mr. Chason: We except. And we object on the further ground that it is not an accurate reproduction of the scene—the material shown has admittedly been re-arranged to the satisfaction of these gentlemen to assist its appearance.

"The Court: Overrule the objection.

"Mr. Chason: We except.

"Q. Mr. Coley, after you took the picture at the police station, what did you then do? A. It was placed in my car and I carried it to Mobile to the Laboratory of the State Toxicologist.

"Q. Who is in charge of that Laboratory? A. Doctor Nelson E. Grubbs.

"Q. You carried it personally yourself that night or day? A. Yes sir.

"Q. What time did you get to Doctor Grubbs' place, if you remember, please? A. The best of my recollection around 8:00 or 8:30."

We do not consider the court's ruling as error. The photograph was taken with a blank white wall for background with two office chairs appearing at one side, apparently used to support the bundles. The pictured marijuana having been identified by the State Criminal Investigator, Mr. Oscar F. Coley, as that found in and about Jemison's premises and as that turned over

by him to Dr. Nelson Grubbs, Assistant State Toxicologist, for analysis, the picture was relevant, since the State later put in evidence the bundles which Dr. Grubbs stated Mr. Coley brought him and which Dr. Grubbs stated contained marijuana.

Jemison also argues that it was error to permit the bundles of marijuana to be offered in evidence (a) because of the failure to concatenate the State's possession of the marijuana from the time of its seizure until it was identified in court by Dr. Grubbs, and (b) because it was re-packaged by the State.

This latter objection we do not consider of any merit, since there is no question of an "original package" doctrine in a case of this sort.

As to the identification of the marijuana described in open court by Dr. Grubbs, it is to be noted that he pointed out he made notes which he had in the form of receipts for the material to Mr. Coley. Mr. Coley had previously testified that the sacks of the material had been loaded up into Jemison's truck, and, apparently because of rain, had been switched to the trunk of the police chief's car and therein carried to the Fairhope police station. After they had been photographed, Coley carried them with him to Mobile to the laboratory of the State Toxicologist. Coley, moreover, stated that he carried the sacks personally to Dr. Grubbs's laboratory.

While Mr. Coley's testimony does not expressly state that he personally delivered the marijuana in person to Dr. Grubbs, nevertheless Dr. Grubbs's testimony as to his issuing receipts to Mr. Coley, when taken with Coley's testimony, sufficiently links the marijuana from the time of its finding until its production in court.

We have considered the entire record as required by Code 1940, T. 15, § 389, and consider that the judgment below is due to be

Affirmed.