JACKIE D. MAYES *v.* STATE OF INDIANA.

[No. 2-1172A110. Filed November 13, 1974. Rehearing denied December 10, 1975. Transfer denied January 24, 1975.]

188

*David F. McNamar, Steers, Klee, Sullivan & LeMay,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves III,* Deputy Attorney General, for appellee.

SULLIVAN, P.J.—Mayes appeals from a conviction of heroin possession. We affirm the judgment.

Mayes presents the following contentions for our determination:

1. The trial court lacked jurisdiction in that Mayes was not prosecuted, as required by Indiana Rules of Procedure, CR. 4(C), within one year after the filing of the affidavit charging him.

2. The trial court erred in admitting hearsay testimony.

3. A witness was permitted to give expert testimony without proper foundation as to his qualifications.

4. Chain of custody of the drug admitted into evidence was not established.

5. The trial court erred in allowing the State to impeach Mayes' credibility by reference to a prior conviction for assault and battery with intent to commit robbery.

6. The trial court erred in not ordering a retraction and not instructing the jury to disregard comments made by the prosecutor during final argument to the effect that Mayes was "caught in two specific lies."

Mayes additionally argues that the absence of a file mark upon the pre-sentence investigation report creates an inference that the report was not considered by the court in sentencing Mayes. This assertion was not contained in Mayes' original Motion to Correct Errors nor in the amended Motion to Correct Errors. It is therefore waived. We note however, the following entry of record which lays to rest such contention:

"Court having examined the Pre-Sentence Investigation Report heretofore filed by Probation Department * * *."

I

FAILURE TO TIMELY PRESENT SPEEDY TRIAL CONTENTION UNDER CR. 4(C) CONSTITUTES WAIVER OF THE DISCHARGE PROVISIONS OF THE RULE AND JURISDICTION OF THE COURT IS NOT AFFECTED

Mayes contends that under Indiana Rules of Procedure CR. 4(C), (as it existed at times here pertinent) the trial court lost jurisdiction of the matter because Mayes was charged by affidavit on September 5, 1969, was not bound over from the Marion County Municipal Court to the Criminal Court until May 25, 1972 and was not tried until July 17, 1972.

In *Utterback* v. *State* (1974), 261 Ind. 685, 310 N.E.2d 552, our Supreme Court construed the discharge provision of Rule CR. 4(B) and held that a defendant must object prior to expiration of the time provided therein if he is to obtain dis-

charge for failure of the State to grant speedy trial. Rule CR. 4(C) was, at the time here in question, similar in its seemingly mandatory discharge provision. In the case before us, Mayes did not raise the question until filing of his Motion for Discharge some five months after trial and three months after his original Motion to Correct Error had been overruled. The following reasoning of the *Utterback* decision is binding upon this court:

> "In *Bryant* v. *State* (1973), [261] Ind. [172], 301 N.E.2d 179 and in *Layton* v. *State* (1973), [261] Ind. [251], 301 N.E.2d 633, we held that under Criminal Rule 4 it was incumbent upon the defendant to protest, at his first opportunity, if his trial date was set for a date subsequent to that permitted under the rule and that his failure to do so must be regarded as acquiescence and a waiver."
>
> \* \* \*
>
> "The material difference between [Rules CR. 4(A) and 4(B)] is that under the one the time starts running automatically, while under the other the defendant must trigger it with a motion. In either event, when a ruling is made that is incorrect, and the offended party is aware of it, or reasonably should be presumed to be aware of it, it is his obligation to call it to the court's attention in time to permit a correction. If he fails to do so, he should not be heard to complain. The courts are under legal and moral mandate to protect the constitutional rights of accused persons, but this should not entirely relieve them from acting reasonably in their own behalf. We will vigorously enforce the right to a speedy trial, but we do not intend that accused persons should escape trial by abuse of the means that we have designed for their protection." 310 N.E.2d 553, 554.

Mayes, however, has not framed his contention strictly in terms of the discharge provision of Rule CR. 4, but rather upon the premise that the failure to prosecute within the time limits set forth therein, served to divest the trial court of jurisdiction. We reject this "jurisdictional" argument in the light of *In Re Brooks* (1966), 247 Ind. 249, 214 N.E.2d 653 and *Randolph* v. *State* (1954), 234 Ind. 57, 122 N.E.2d 860, *cert. denied*, 350 U.S. 889, 76 S. Ct. 145, 100 L. Ed. 783 (1955), which specifically held, in

construing Ind. Ann. Stat. § 9-1402-1404 (the predecessors of Rule CR. 4), that a failure to make a timely motion for discharge prior to trial constitutes a waiver of the right to discharge and that under such circumstances, the jurisdiction of the criminal court is not affected.

## II

### INCULPATORY HEARSAY TESTIMONY IMPROPERLY ADMITTED WAS RENDERED HARMLESS BY INDEPENDENT EVIDENCE OF GUILT

The appellant Mayes contends that the trial court erred in admitting hearsay testimony from arresting officer Mukes. The testimony and the objection thereto was as follows:

"Q. And why were you going to that location?

A. We had received information from the Federal narcotic officer that narcotic drugs were being sold—

*Mr. Pehler:* Now Your Honor, I am going to object to any information that he received second handedly unless they want to bring that agent in so we can have the opportunity to cross-examine him.

*Court:* Overrule the objection.

A. We received information from a narcotic officer; we had met the federal narcotic officer. He gave us information that he observed narcotic sales in the 100 block of West 30th Street, that would be the 100 block of West 30th Street, the first alley that runs north in the rear of a restaurant that—and he described the clothing that the individual that he had observed selling the narcotic drugs was wearing.

*Mr. Pehler:* Your Honor, at this time I am going to have to interrupt the witness—excuse me sir—and interpose another objection in that it is in the continuing nature of hearsay testimony which we have no opportunity to cross-examine on his informing this jury of information which he has received. I don't know what it is going to be concerning or who it is going to be concerning at this time but if it relates in any capacity to this trial then—of this Defendant, then it would be extremely prejudicial as being hearsay evidence and would be inadmissible and we would move to strike the

testimony which he has already given and ask the jury to disregard it.

*Court:* At this point we are going to overrule your objection and deny your motion to strike up to this time."

The prosecutor next asked Officer Mukes what he did after having received that information. The officer testified that he and the officers accompanying him proceeded to 30th and Illinois Streets. The events which transpired at that location as testified to by Officer Mukes and one of his partners were as follows: When the officers arrived at the location (an alley immediately West of 30th and Illinois Streets in Indianapolis), Mukes saw Mayes standing with two or three other persons. When the officers started to exit their car, Mayes "turned and started to flee." Mayes threw a plastic vial to the ground. The vial held capsules later found to contain heroin.

Despite the arguably inoffensive question which prompted the testimony complained of, Mayes, relying upon *Harvey* v. *State* (1971), 256 Ind. 473, 269 N.E.2d 759, *Glover* v. *State* (1969), 253 Ind. 121, 251 N.E.2d 814, and *Bryant* v. *State* (1933), 205 Ind. 372, 186 N.E. 322, contends that since probable cause for his arrest was not in issue, the evidence was clearly offered to show the truth of the matters asserted therein, i.e., that he illegally possessed a narcotic drug. Contrariwise, the State looks to the question asked and relying exclusively upon *Boles* v. *State* (1973), 259 Ind. 661, 291 N.E.2d 357, argues that the testimony is not hearsay in that it merely explained the reason why the officer had proceeded to the location where Mayes was arrested.

While the prosecutor's question here is much the same as that asked in the *Boles* case, *supra,*[1] the answer is not nearly so innocuous as in that case but neither is it so directly or personally implicative as the testimony considered in the *Harvey, Bryant,* or *Glover* cases, *supra.* In *Boles,* a burglary case, the witness stated that some boys told him "somebody

---

1. The question asked in *Boles* was: "Did anything occur to call your attention to the Zephyr Station across the street?"

was breaking in." The defendant there was not connected by the hearsay statement with the "breaking in". In the *Bryant* case, *supra,* the defendant was convicted of illegal transportation of intoxicating liquor and the arresting officer testified that he had been informed that the defendant was a bootlegger. In *Glover, supra,* the officer testified "in substance" that he had been informed that "the defendant was guilty." Similarly in *Harvey* v. *State, supra,* the police officer's testimony concerned an extra-judicial statement made to him by a third party. The third party's statement concerned a meeting at which he, the defendant, and others were present and during which meeting the defendant made an inculpatory remark. *See also, Olson* v. *State* (1974), 262 Ind. 329, 315 N.E.2d 697.

By implication, the State would have us classify testimony as hearsay or not according to the question which elicits that testimony. To be sure, in many if not most cases, the intended purpose of the evidence may be divined from the question that is asked. But such is not necessarily true nor may the single question giving birth to the alleged hearsay be viewed outside the framework of the matters at issue.

As Mayes asserts, we are not here concerned with a probable cause for arrest or with a search and seizure, the validity of which depends upon the reliability of an informant. Were it so, the testimony of Mukes concerning his information from the federal narcotics agent would be supportive of probable cause and of probative value upon that issue. Here, the State was not called upon to establish a reason for Officer Mukes and his associates to be at 30th and Illinois Streets, nor to justify an investigation of that location. We might, therefore, speculate—perhaps accurately—as to an ulterior motive on the part of the prosecutor in posing the question to Officer Mukes. And we might—perhaps again accurately—conclude that the testimony was not, as argued by the State, introduced merely to explain why the officers proceeded to 30th and

Illinois but rather was intended to serve as an additional weapon in the evidentiary arsenal to be used against Mayes.

Viewed in this light, Officer Mukes' answer bears every earmark of the "evidentiary harpoon" condemned in *White* v. *State* (1971), 257 Ind. 64, 272 N.E.2d 312. *See also, King* v. *State* (1973), 155 Ind. App. 361, 292 N.E.2d 843. Our Supreme Court in *Glover* v. *State, supra,* cautioned overzealous prosecutors as follows:

> "Hearsay testimony that law enforcement officers use and rely upon for investigation and the gathering of competent and material evidence, of course is not evidence properly to be used in the trial of a criminal case." 253 Ind. at 126.

The testimony in question falls clearly within the proscription of the *Glover* case and was therefore improperly admitted. We need not, therefore, ascribe to the State any subjective purpose in offering the testimony in an attempt by us to categorize it as hearsay or not; nor need we determine whether our facts fit within the holding of *Boles, supra,* or are governed by the *Harvey, Bryant* and *Glover* line of authority. The error in admitting Officer Mukes' answer is not cause for reversal, however.

As hereinbefore recited, the events which took place after the arrival of the police at 30th and Illinois Streets and which took place in their presence, provided ample, if not overwhelming, evidentiary support for Mayes' conviction. The error in admitting the hearsay testimony of Officer Mukes, if it be such, was therefore harmless. *England* v. *State* (1968), 249 Ind. 446, 233 N.E.2d 168; *Gayer* v. *State* (1965), 247 Ind. 113, 210 N.E.2d 852 (opin. on rehearing 247 Ind. 123, 212 N.E.2d 544); *Adams* v. *State* (1946), 224 Ind. 472, 69 N.E.2d 21. *See also, Wills* v. *State* (1974), 162 Ind. App. 159, 318 N.E.2d 385; *Schmitt* v. *State* (1974), 160 Ind. App. 109, 310 N.E.2d 73.

Mayes asserts in this regard that the hearsay testimony is not harmless. He contends that it was not corroborated

insofar as it constituted evidence that narcotics were in fact being sold at the location specified by the federal agent. Mayes would support this position by the argument that the initial test results from the Indianapolis Department, as to the identity of the substance seized at the time of his arrest, were inconclusive. Even if the reference to information provided by the federal agent were to be considered as evidence of the identity of the substance thereafter seized, laboratory testing subsequent to the inconclusive tests, and as discussed more thoroughly in Parts III and IV, did provide a conclusive opinion. Corroboration in this context was present.

## III

## MANIFEST ABUSE OF DISCRETION NOT SHOWN IN ADMITTING EXPERT TESTIMONY BY TOXICOLOGY TECHNICIAN AS TO IDENTITY OF SUBSTANCE TESTED BY HIM

James Forbes, Chief Technician for the Indiana toxicologist testified that he tested the substance seized by the arresting officer at the time of Mayes' arrest and found it to be heroin.

Mayes contends that the State failed to adequately establish the witness' qualifications to so testify. The evidence as to Forbes' qualifications disclosed that: He was the chief technician for Dr. Robert Forney who is the toxicologist for the State of Indiana; he had a B.S. degree in Biology and was working part-time on his Ph.D. in Toxicology; he had been chief technician for three years; and he did 100% of all the identification work for the Indiana State Police, 5% of the identification work for the Indianapolis Police Department, all the blood alcohol work in Indiana, and all biological drug identification for coroners.

Conceding that a determination of one's qualification to testify as an expert is a matter within the discretion of the Court, the appellant nevertheless contends that a clear abuse

thereof is shown by the fact that "identification work" was never defined, and that there was no showing that he had any experience in identifying suspect substances. Appellant also makes the unsupported assertion that there is a substantial difference between biological identification of drugs in tissue as opposed to identification of the substance itself.

While the questioning of the witness as to his qualifications was not so thorough or specific as artful trial practice would dictate, we are unable to state that admission of the testimony upon the basis of the qualifications disclosed was a manifest abuse of the trial court's discretion. *Pettit* v. *State* (1972), 258 Ind. 409, 281 N.E.2d 807; *Eskridge* v. *State* (1972), 258 Ind. 399, 281 N.E.2d 490; *Patterson* v. *State* (1970), 255 Ind. 22, 262 N.E.2d 520; *Tyler* v. *State* (1968), 250 Ind. 419, 236 N.E.2d 815; *Dougherty* v. *State* (1934), 206 Ind. 678, 191 N.E. 84.

## IV

### CHAIN OF CUSTODY ADEQUATELY ESTABLISHED TO QUALIFY TESTIMONIAL EVIDENCE AS TO IDENTITY OF SUBSTANCE ALTHOUGH SUBSTANCE ITSELF NOT ADMISSIBLE

It is Mayes' contention that there was a substantial break in the chain of custody of the exhibit identified as heroin and admitted at trial. He argues that the integrity of this exhibit is of particular importance since the initial police laboratory test was inconclusive as to the identity of the substance.

The evidence of record discloses that immediately after Officer Mukes seized the vial and field tested its contents (concluding that the substance "was a derivative of opium"), the vial and its contents were marked for identification purposes and placed in a manila envelope by Officer Mukes. The envelope was then locked in a deposit box in the police property room. On that same date, Officer Charles Caine

removed the sealed envelope from the deposit box and took it to the Indianapolis Police Laboratory for safekeeping and until tests could be conducted. It was placed in an evidence cabinet used for storage of suspect narcotics. Officer Caine testified that the Indianapolis Police Laboratory was kept locked and that of the eleven laboratory personnel, only six possessed keys. Some seven months later Officer Caine opened the envelope and performed tests which were insufficient to permit him to reach a factual conclusion as to the identity of the substance. On that same date Officer Caine delivered the envelope and its contents to James Forbes at the State Toxicology Laboratory for the purpose of further testing.

Forbes, who testified as an expert witness, received the exhibit directly from Caine. Forbes placed it in an "evidence lock-up" to which only he and the associate lab director had keys. Forbes thereafter tested the substance and returned the exhibit directly to Officer Caine. On that date, May 12, 1970, Officer Caine returned the exhibit to the Police Laboratory for safekeeping. Officer Goeden, who had participated in the arrest of Mayes testified that he removed the sealed exhibit from the police department narcotics vault on July 17, 1972, the morning of trial, and brought it to court.

At first blush, it would appear that appellant's contention in this regard might be summarily rejected and the state's exhibit held admissible upon authority of *Spright* v. *State* (1970), 254 Ind. 420, 260 N.E.2d 770. There, a narcotic possession conviction was affirmed under virtually identical circumstances. We feel that extended quotation from the *Spright* case is necessary as follows:

"Appellant's contention that the judgment is contrary to law for the reason that the packages containing the alleged marijuana were admitted into evidence without proper custodial identification must also fail. With respect to the 'chain of custody' method of identification of an exhibit, this Court recently stated, in the case of *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652, that:
'The chain of evidence method of identification is a widely recognized concept in both criminal and civil law.

> In most cases it is not possible to establish the identity of an exhibit in question by a single witness. The exhibit has usually passed through several hands before being analyzed or examined or before being produced in court * * *.
>
> (I)t is necessary to establish a complete chain of evidence tracing the possession of the exact and original exhibit to the final custodian. If one link of the chain is *entirely* missing, the exhibit cannot be introduced or made the basis for the testimony or the report of an expert or officer. If the testimony of the State's expert witnesses * * * is sought to be offered at trial, then the State should be prepared to establish a "chain of evidence" by either producing police custody records showing the same or by testimony of witnesses * * *.
>
> *Unless the State can show by producing records or testimony, the continuous whereabouts of the exhibit at least between the time it came into their possession until it was laboratory tested to determine its composition, testimony of the State as to the laboratory's findings is inadmissible.'* [Original emphasis].

We feel the State has met its burden in this regard. Sergeant Anderson testified that after he found the four aluminum foil packages at the scene of appellant's arrest and marked them for identification he gave them to Officer Drummond and instructed him to turn them into the police property room. Officer Drummond testified that he personally took the packages to the police property room on August 21, 1967, as instructed. Officer Kirkoff testified that on August 22, 1967, he went to the police property room and was given the packages so that he might analyze the contents thereof. He stated that the property room records showed that the material was turned into the property room at 9:15 a.m. on August 21, 1967, the day of appellant's arrest, by Officer Drummond. The State has shown, by the testimony of these witnesses, the continuous whereabouts of State's Exhibits 1 through 4 *from the time they came into the possession of Sergeant Anderson until they were laboratory tested by Officer Kirkoff. Therefore, the exhibits themselves and the testimony given by Officer Kirkoff with respect to the contents of said packages were properly admitted into evidence."* (Emphasis supplied) 254 Ind. 420, 427-428.

*See also, Kolb* v. *State* (1972), 258 Ind. 469, 282 N.E.2d 541 involving an apparent gap between testing in an Indianapolis

laboratory and placing of the exhibit in a police property room where it remained until trial in Gibson County; *Kelley* v. *State* (1974), 161 Ind. App. 253, 315 N.E.2d 382; *Butler* v. *State* (1972), 154 Ind. App. 361, 289 N.E.2d 772.

The seemingly clear-cut holding of *Spright, supra,* is not so easily applied, however, in light of other decisions of our Supreme Court. In the keystone "chain of custody" case, *Graham* v. *State* (relied upon in *Spright, supra*), the Supreme Court held as improperly admitted, testimony concerning a substance sought to be identified as heroin.

The court therein said:

"Not only was there a break in the chain of custody between the time of defendant's possession of the chewing gum wrapper and the laboratory test of its contents, *but there was also a second break which occurred between the execution of the laboratory test and the trial. Although no heroin was actually admitted into evidence at the trial, and we believe that conviction could be sustained without such admission,* appellant seeks to exclude testimony relating to the results of the laboratory tests conducted by various state's witnesses, contending that whatever it was that was tested could not be shown to have come from his possession.

The chain of evidence method of identification is a widely recognized concept in both criminal and civil law. In most cases it is not possible to establish the identity of an exhibit in question by a single witness. The exhibit has usually passed through several hands before being analyzed or examined or before being produced in court. Certainly this is the case here. The record indicates that, *from the time of the alleged 'buy' until the trial,* the exhibit was handled by at least eight different property clerks who either received or released it from the police property room. In addition it was handled by at least three police officers at different times during the same period.

Under such circumstances as these *it is necessary to establish a complete chain of evidence tracing the possession of the exact and original exhibit to the final custodian.* If one link of the chain is entirely missing, the exhibit cannot be introduced or made the basis for the testimony or the report of an expert or officer." (Emphasis supplied) 253 Ind. 525, 530.

More recently, in *Martin* v. *State* (1974), 262 Ind. 232, 314 N.E.2d 60, the court stated the chain of custody rule as follows:

"The chain of custody rule in Indiana requires that before an exhibit may be introduced against a defendant at trial the State must establish a link between the defendant and the exhibit and also establish the whereabouts of the exhibit *from the time of the seizure until its introduction at trial. Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652." (Emphasis supplied) 314 N.E.2d at 68.

It is difficult to reconcile the decisions in the context of questions which must be posed with respect to a given factual setting: Does the chain of custody rule apply only to the admission of the physical exhibit or does it apply as well to testimony with respect to the article or substance involved? Must the chain be complete only through the time of testing and identity or must it be proved to the moment of introduction at trial? If the chain is proved only through testing, may testimony be received concerning such test even though the exhibit itself must be excluded from evidence?

Our analysis of case authority leads us to conclude that while any substantial break in the chain of custody to the time of trial might require exclusion of the exhibit offered, not all relevant testimony concerning that article or substance need be excluded. Where as here, the chain is unbroken from the time of its seizure to the time the substance in question has been tested with conclusive results, testimony to that effect may be received.

As the court in *Graham, supra,* noted (although somewhat parenthetically), conviction for narcotic possession does not depend upon having the substance itself admitted into evidence. Other precedent is in more direct support of this proposition. In *Holler* v. *State* (1941), 219 Ind. 303, 38 N.E.2d 242, a conviction for receiving stolen goods was affirmed notwithstanding appellant's complaint that none of the stolen property was introduced into evidence.

The Court held that introduction of the stolen items was unnecessary. The Court, in part perhaps, considered the factor that the brass plates "alleged to have been stolen seemed not to have been available" (*see also, Smithhart* v. *State* (1971), 256 Ind. 533, 270 N.E.2d 740, distinguishing *Keiton* v. *State* (1968), 250 Ind. 294, 235 N.E.2d 695) but went on to say:

> "The appellant cites no authority which supports his contention that the identification of this plate [witness described plates stolen using a sample plate for identification purposes] was prejudicial to his rights, and we cannot see that his rights were prejudiced." 219 Ind. at 305.

In *Dixon* v. *State* (1945), 223 Ind. 521, 528, 62 N.E.2d 629, defendant was convicted of receiving and concealing stolen goods. The Court citing *Holler, supra,* held:

> "It is also permissible to admit testimony that certain described articles had been stolen without introducing the articles themselves in evidence."

The *Holler* and *Dixon* cases were, like the crime here, possession offenses. Therefore, as in those cases, we do not believe that the validity of the conviction here depends upon producing the article or substance itself in open court. If the essential elements of the crime are established by sufficient evidence of probative value without regard to the physical exhibit itself, the conviction will be affirmed. *Palmer* v. *State* (1972), 153 Ind. App. 648, 288 N.E.2d 739; *Smith* v. *State* (1972), 258 Ind. 594, 283 N.E.2d 365.

This is not to say that there need be no chain of custody shown as a prerequisite to testimonial evidence. In *Jones* v. *State* (1973), 260 Ind. 463, 296 N.E.2d 407, 409, the Supreme Court held:

> "Appellant's major objection to the admission of the exhibits (and objection to Caine's testimony based on tests conducted on the exhibits) was that a break in the chain of possession of the evidence occurred, making the evidence inadmissible under the doctrine established in *Graham* v. *State* (1970), 253 Ind. 525, 255 N.E.2d 652. Under that

doctrine, a foundation must be laid connecting the exhibit with the defendant and showing the continuous whereabouts of the exhibit from the time it came into the possession of the police *until it was laboratory tested.* The purpose of the rule is to avoid any claim of substitution, tampering or mistake."

And in the *Graham* case, *supra,* 253 Ind. 525, 531-532, the court most revealingly held:

"Unless the state can show by producing records or testimony, the continuous whereabouts of the exhibit *at least between the time it came into their possession until it was laboratory tested* to determine its composition, testimony of the state as to the laboratory's findings is inadmissible. For cases in other jurisdictions so holding see: *U.S.* v. *Freeman* (10th Cir. 1969), 412 F.2d 1181; *U.S.* v. *Burris* (7th Cir. 1968), 393 F.2d 81; *Williams* v. *U.S.* (9th Cir. 1967), 381 F.2d 20; *Barquera* v. *State of California* (9th Cir. 1967), 374 F.2d 177; *Novak* v. *District of Columbia* (D.C. Cir. 1947), 160 F.2d 588; *Jemison* v. *State* (1965), 40 Ala. App. 581, 120 So.2d 748; *State* v. *Rascon* (1965), 97 Ariz. 336, 400 P.2d 330; *People* v. *Waller* (1968), 260 Cal. App.2d 131, 67 Cal. Rptr. 8; *People* v. *Judkins* (1964), 10 Ill.2d 445, 140 N.E.2d 663; *Breeding* v. *State* (1959), 220 Md. 193, 151 A.2d 743; *State* v. *Baines* (Mo. 1965), 394 S.W.2d 312; *State* v. *Johnson* (1965), 90 N.J. Super. 105, 216 A.2d 397; *Joyner* v. *Utterback* (1923), 196 Iowa 1040, 195 N.W. 594; *People* v. *Pulliam* (1967), 28 App. Div.2d 786, 281 N.Y.S.2d 137; *State* v. *Chapman* (1968), 251 La. 1089, 208 So.2d 686; *State* v. *Anderson* (1966), 242 Ore. 368, 409 P.2d 681; *Andrews* v. *State* (1968), Tex., 436 S.W.2d 546; *State* v. *Lee* (1968), Wash., 447 P.2d 169; see also annotation 21 A.L.R. (2d) 1216."

The *Graham* case therefore provides a demarcation line between testimonial evidence and admission of the physical evidence itself, although the earlier quoted portion of that decision may not appear to draw such distinction.

While in the case before us, there is an evidentiary gap in the chain of custody between May 12, 1970 when Officer Caine returned the exhibit to the police laboratory after conclusive testing, and July 17, 1972, the date on which Officer Goeden removed it from the police

department narcotic vault and brought it to court, such gap and the unexplained manner in which the exhibit got from the police laboratory to the narcotics vault do not require reversal.

A synthesis of the cases disclosed by our research discloses, as hereinbefore noted, some seeming inconsistencies. Be that as it may, we conclude that at least as to testimony with respect to laboratory findings the crucial period with respect to establishment of an unbroken chain of custody of the substance tested is that period from the time the substance is seized from, or directly connected with, the defendant until it is tested with conclusive results. So long as the substance seized is shown by the testimony to be the same as that which was tested and so long as there is no indication that it had been altered or tampered with during the period, unexplained inter-departmental transfers of custody during subsequent periods are, of themselves, not cause for reversal. *See, Kolb* v. *State, supra.*

The evidence of record, as hereinabove recited, forges a satisfactory chain of custody for the crucial period between seizure of the substance and its testing. We need not and do not, therefore, deem as determinative *Bellamy* v. *State* (1972), 259 Ind. 254, 286 N.E.2d 401 which held a preliminary field test by arresting officers sufficient evidence as to the identity of the substance seized without regard to a subsequent laboratory test which was possibly affected by a break in the chain of custody.

It was error to admit the State's Exhibit here, since the evidentiary chain of custody was broken after testing and since therefore it could not be stated conclusively that the exhibit admitted into evidence was the same as that seized from the defendant and thereafter tested. However, the testimony concerning the substance as to its connection with defendant and as to its identity as

heroin was properly admitted. The chain of custody during that crucial period was established.

## V

## CROSS EXAMINATION OF DEFENDANT WITH REFERENCE TO PRIOR CONVICTION FOR ASSAULT AND BATTERY WITH INTENT TO COMMIT ROBBERY ADMISSIBLE WITHIN RULE OF *ASHTON* V. *ANDERSON*

Mayes asserts prejudicial error in permitting the State to cross-examine him for impeachment purposes as to a prior conviction for assault and battery with intent to commit a felony, to-wit: Robbery.

The applicable rule is set forth in *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, 216-217:

> "For all of the reasons discussed above, this Court holds that for the purpose of impeaching the credibility of a witness pursuant to IC 1971, 34-1-14-13 [Ind. Ann. Stat. § 2-1724 (1968 Repl.)] or IC 1971, 35-1-31-6 [Ind. Ann. Stat. § 9-1608 (1956 Repl.)], only those convictions for crimes involving dishonesty or false statement shall be admissible * * * However, this Court is bound by IC 1971, 34-1-14-14, [Ind. Ann. Stat. § 2-1725 (1968 Repl.)], which permits impeachment by showing prior convictions for crimes which would have rendered a witness incompetent. These crimes are: treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful and corrupt perjury."

In order, therefore, to serve as a basis for impeachment of credibility, a prior conviction must fall within one of three distinct categories:

(1) One of the nine crimes enumerated; or

(2) A crime involving dishonesty; or[2]

(3) A crime involving false statement.

---

2. Use of the disjunctive "or" clearly implies that crimes involving dishonesty are not limited to those crimes involving false statement, i.e., "a lack of veracity", such as "fraud, forgery, perjury, and the like."

The offense with which we are here concerned does not fall within categories (1) or (3). We must therefore determine whether the offense is one which involves dishonesty.

In *State ex rel. Hundley* v. *Jay* (1937), 104 Ind. App. 259, 10 N.E.2d 737, the term "dishonesty", in its ordinary meaning, was said to include an element of deceit, bad faith, or dishonest conduct on the part of the person charged:

> "In *American Surety Co.* v. *Jay Lodge*, 102 Ind. App. 82, 92-93, 196 N.E. 356, 361 (1935), the Indiana court defined dishonesty as '[a] want of integrity in principle; a want of fairness and straightforwardness; a disposition to defraud, deceive or betray; faithlessness, or a course of conduct generally characterized in the common speech of men as lacking in principle."

In order to accept appellant's contention here, it would be necessary to conclude that it is fair to steal or that an intent to steal displays no "want of integrity in principle; [or] want of fairness."

Robbery is defined by statute as follows: "Whoever takes from the person of another any article of value by violence or putting in fear, is guilty of robbery." IC 35-13-4-5, Ind. Ann. Stat. § 10-4101 (Burns 1956). As stated in *Gregory* v. *State* (1973), 259 Ind. 652, 291 N.E.2d 67, 69:

> "The intent requisite to the crime of theft then, is also requisite to the crime of robbery."

When Mayes was previously convicted of assault and battery with the intent to commit robbery, he was convicted of having had the intent to take something of value from his victim. The intent was most certainly a dishonest one. This assault and battery, because specifically found by the jury to have been done with the intent to rob, was a crime "involving dishonesty" and thus within the purview of *Ashton* v. *Anderson, supra.* The question posed upon cross-examination was not improper.

## VI

### ALLEGED MISCONDUCT BY PROSECUTOR IN STATING DURING CLOSING ARGUMENT THAT DEFENDANT HAD BEEN "CAUGHT IN TWO SPECIFIC LIES", NOT CAUSE FOR REVERSAL

During the course of the trial there was some dispute concerning the failure of Mayes to previously appear in court while free on bail.

Mayes indicated that he had not been notified of the time of his required court appearance. This dispute brought into question the whereabouts of Mayes during various times, i.e., the place of his residence, and his place of employment.

During closing argument the Deputy Prosecutor, in referring to that facet of the trial, argued to the jury that Mayes had been "caught in two specific lies." It is this comment which Mayes alleges to be ground for reversal.

It may be said that a defendant's character must be presumed good unless put into issue. When, however, a defendant takes the stand on his own behalf, it is proper to comment upon his character and credibility. *De-Hority* v. *State* (1939), 215 Ind. 390, 19 N.E.2d 945.

As a general principle, it may be stated, as contained in the Commentary, *ABA Standards Relating to The Prosecution Function,* § 5.8 (b) :

> "The line between permissible and impermissible argument is a thin one. Neither advocate may express his personal opinion as to the justice of his cause or the veracity of witnesses. Credibility is solely for the triers, but an advocate may point to the fact that circumstances or independent witnesses give support to one witness or cast doubt on another. The prohibition goes to the advocate's personally endorsing or vouching for or giving his opinion; the cause should turn on the evidence, not on the standing of the advocate, and the witnesses must stand on their own."

Yet not every argumentative characterization in this respect is cause for reversal. In *Anderson* v. *State* (1885), 104 Ind.

467, 4 N.E. 63, the prosecutor, in opening statement and before any evidence was submitted, referred to the rape defendant as a "dirty dog". The court there held:

"It was, strictly speaking, a breach of professional decorum to apply opprobrious epithets to the appellant in *advance of the introduction of any evidence from which disparaging inferences might have been drawn,* and the circuit court would have been justified in restraining the prosecuting attorney from the use of such epithets in a merely opening statement; but the breach of professional decorum thus involved ought not to be regarded as of sufficient importance to cause a reversal of the judgment. *Bessette* v. *State,* 101 Ind. 85; *Epps* v. *State,* 102 Ind. 539." (Emphasis supplied) 104 Ind. 467, 475.

It is true, nevertheless, that language of a denunciatory nature used in closing argument to reflect adversely upon the character or truthfulness of a witness, be he defendant or not, is improper unless supported by evidence. *Adler* v. *State* (1961), 242 Ind. 9, 175 N.E.2d 358.

It is entirely possible that Mayes did not lie from the witness stand as to his residence and place of employment. It is possible that he told the truth or it is possible that he was merely mistaken. In any event, even if the deputy prosecutor drew a wrong inference from the facts in evidence, such error does not necessarily render his comment reversible error. *Osburn* v. *State* (1905), 164 Ind. 262 at 269, 73 N.E. 601.

In *Boyle* v. *State* (1886), 105 Ind. 469, 480-481, 5 N.E. 203, the court under somewhat similar facts affirmed the conviction stating:

"The prosecuting attorney, in the course of his argument, said: 'Will you believe this man, this person, who has told so many lies, and who has just seen the shadow of the gallows!' In so far as the statement of the prosecuting attorney criticises the testimony of the accused, it was proper, for he had testified as a witness, and had been contradicted upon many material points. An accused who voluntarily goes upon the witness stand is subject to the same criticism as any other witness, and it is not improper

to assail in argument his credibility when he has been contradicted. *Thomas* v. *State,* 103 Ind. 419."

And in *DeHority* v. *State, supra,* although the court reversed the conviction because of other independent prosecutorial misconduct, it said:

"Nor would we be inclined to reverse the cause because, under the heat and stress of a trial, the attorney indulged in a choice of words in presenting his argument to the jury that falls short of reflecting that dignity of expression which is usually expected of a member of a learned profession. It would, no doubt, have been equally as effective, if he had clearly pointed out the inconsistencies and contradictions in the testimony of the witness and relied upon the intelligence of the jury to draw the ultimate conclusion, rather than to have boldly stated his own partisan opinion that she was a liar and a perjurer." 215 Ind. at 395.

In the final analysis, the test must be that as stated by our Supreme Court in *Maynard* v. *State* (1971), 257 Ind. 336, 274 N.E.2d 396, 400:

"The trial court is in better position than the Supreme Court to determine whether remarks of counsel conform to the rules of propriety, and where there is misconduct, to determine whether it is harmful to the complaining party. In the absence of a clear showing of prejudice or breach of discretion on the part of the trial court, judgment will not be set aside because of a charge of misconduct of counsel. *Soucie* v. *State* (1941), 218 Ind. 215, 31 N.E.2d 1018."

We do not believe that allowance of the deputy prosecutor's final argument to the jury has been clearly shown to be a breach of the trial court's discretion in permitting counsel to engage in adversary advocacy.

For all of the foregoing reasons, we affirm the judgment.

White, J., concurs; Buchanan, J., dissents with opinion.

## DISSENTING OPINION

BUCHANAN, J.—I respectfully dissent from the majority opinion and would reverse the trial court's judgment because

reversible error was committed in allowing the State over Mayes' objection to introduce evidence of his prior conviction of Assault and Battery with Intent to Commit a Felony (Robbery), which is not a crime having a tendency to reflect on his credibility for truth and veracity.

## RESTATEMENT OF ESSENTIAL FACTS

During cross-examination, the State was allowed, over objection, to question Mayes as to a prior conviction:

"Q. On June 8, 1962, you were convicted of the crime of Assault and Battery With Intent to Commit a Felony, to-wit: Robbery, is that not true?

"A. That is true.

"*Mr. Pehler:* For the record we will show our continuing objection.

"*Court:* Very well, let the record show Defendant's objection to the question, the Court overruling the same."

Arguments of counsel out of the presence of the jury revealed that Mayes had been charged with Robbery, but had pleaded guilty to the lesser included offense of Assault and Battery with Intent to Commit a Felony.

## GROUNDS FOR DISSENT

Assault and Battery with Intent to Commit a Felony (Robbery) is neither a crime involving dishonesty or false statement, nor is it one of the enumerated offenses permitted by Statute[1] to impeach a witness.

The entire thrust of *Ashton* v. *Anderson* (1972), 258 Ind. 51, 279 N.E.2d 210, is that evidence of prior crimes of a witness is admissible only if the particular conviction is for a crime which has a tendency to reflect on the individual's credibility for truth and veracity.

1. IC 1971, 34-1-14-14, Ind. Ann. Stat. § 2-1725 (Burns Supp. 1974).

In fact the test created by Justice Hunter on behalf of the majority is definitively stated below to be:

> "Simply stated, either the particular criminal conviction *reflects on the witness' credibility for truth and veracity, or it does not*. If the particular conviction is for a crime which has a tendency to reflect on the individual's credibility for truth and veracity, such evidence should not be excluded; if the prior conviction is for a crime which has no bearing whatsoever on his credibility for truth and veracity, such evidence should not be admitted." (emphasis supplied)

The opinion goes on to favorably quote Professor Wigmore's statement that, ". . . The other attitude is entirely logical, and admits only such misconduct as indicates a lack of veracity, — fraud, forgery, perjury, and the like. . . ."

It is a matter of only admitting *crimes that indicate a lack of veracity*.

In so holding the Court overruled previous cases in any way indicating that "any prior conviction for a crime must be admitted in evidence."

Thus the tenor of *Ashton* is that convictions of criminal offense which "have no bearing on the individual's propensity to tell the truth" are not admissible in evidence.

This language used by the Court reflects a desire to limit the admissibility of a witness' prior crimes to those specifically enumerated in the Statute and to those involving "dishonesty or false statement." The reasonable implication is that, while there are so-called infamous crimes listed in the Statute which render a witness incompetent, the words "dishonesty or false statement" are to be narrowly construed so as to include only those crimes involving such misconduct as indicates a lack of veracity or propensity to tell the truth.

The majority of this Court, in my humble opinion, paint with too broad a brush. All crimes have some element of dishonesty in the broad sense of moral depravity.

Words are little creatures waiting to do our bidding, and different words have different meanings in different contexts. The word "dishonesty" as used in *Ashton* is not used in a broad generic sense which might be applied to crimes in general. Rather, it is used as defined in Webster's Third New International Dictionary: ". . . characterized by lack of truth, honesty, probity, or trustworthiness or by an inclination to mislead, lie, cheat, or defraud."[2] [Webster's Third New *INTERNATIONAL DICTIONARY*, p. 650.]

It would also seem that Mayes' Assault and Battery involved a crime of violence which does not necessarily reflect "on [his] credibility for truth and veracity."

Granted, fine distinctions are required in deciding which crimes not specified in the Statute render a witness incompetent because conviction reflects on his lack of veracity (honesty). Distinguish we must if we are to follow a standard of limiting impeachment to prior crimes involving "dishonesty" in its restricted sense of untruthfulness or deceit. "Dishonesty" and "false statement" become virtually synonymous.

Two recent decisions buttress an interpretation of *Ashton* confining dishonest crimes to be those reflecting on the "witness' credibility for truth and veracity." In *Dexter* v. *State* (1973), 260 Ind. 608, 297 N.E.2d 817, the State had attempted to impeach the credibility of the defendant (charged with aggravated assault and battery) on cross-examination by questioning him of prior convictions for assault. Our Supreme Court unanimously reversed, Justice Prentice saying:

> "By *Ashton* v. *Anderson* . . ., we established the rule that *only those convictions for crimes involving dishonesty or false statements and those crimes which the statute permits to be shown for impeachment* (treason, murder, rape, arson, burglary, robbery, kidnapping, forgery and wilful and corrupt perjury) *may be shown for such purposes.*" (emphasis supplied) 297 N.E.2d at 818.

2. Black's Law Dictionary is to the same effect: "Dishonesty. Disposition to lie, cheat or defraud; untrustworthiness; lack of integrity." [Black's *LAW DICTIONARY* (Fourth Ed.), p. 554].

In *Lewis* v. *State* (1973), 157 Ind. App. 149, 299 N.E.2d 193, defendant was charged with violation of the Offenses Against Property Act. During the prosecutor's cross-examination, Lewis was questioned about (and directed to answer over objection) prior convictions of Malicious Prosecution and Joy-riding, for the purpose of impeaching his credibility. In reversing the trial court judgment, this Court stated:

> "In this case the prosecutor questioned the Appellant about the prior convictions of 'Malicious Trespass' and 'Joy-riding', neither of which are within those crimes set out in *Ashton* v. *Anderson* for which the prior conviction of which may be used for impeachment purposes."
>
> \* \* \*
>
> "It would appear that *our Supreme Court has been both specific and exclusive in regard to the crimes by which a witness may be impeached.* . . . None of the offenses by which the prosecutor elicited impeachment testimony are within the confines of any of those crimes above specified in *Ashton* v. *Anderson* and *Dexter.*" (emphasis supplied) 299 N.E.2d at 194.

*Dexter* held that simple assault is inadmissible as impeaching evidence. Simple assault and assault and battery with intent to commit a felony (robbery) both involve the use of violence and do not primarily indicate a lack of veracity or reflect, as such, on the witness' credibility for truth and veracity.

In the courtroom search for truth the trier of fact is not aided by indiscriminate blackening of a witness' character, but is aided by knowledge that the witness has been convicted of crimes reflecting on his credibility for truth and veracity.

Mayes' prior conviction did not bear on his credibility for truth and veracity, and therefore was not "dishonest" in the limited sense that term was used in *Ashton*.

The judgment of the trial court should be reversed.

Note.—Reported at 318 N.E.2d 811.